(No. 36329.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* A. D. JACKSON, Plaintiff in Error.

*Opinion filed March 23, 1962.*

BASIL P. MANN, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and JOHN T. GALLAGHER and M. ROBERT OSTROW, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, A. D. Jackson, was indicted in the criminal court of Cook County for the crime of rape. He waived a trial by jury, was tried before the court, found guilty, and sentenced to five years imprisonment in the penitentiary. Upon this writ of error he urges that the State failed to prove him guilty beyond a reasonable doubt.

The complaining witness was a waitress who worked from midnight to 8:00 A.M. At about 11:00 P.M. on the night of July 4, 1959, she left her apartment on the south side of Chicago to go to work. While walking past a building at 6449-51 Minerva she noticed a man coming toward her from the vestibule of the building. He lunged at her, got one arm around her, and pressed something into her side, saying, "Keep walking, bitch, and don't say a word." They walked a short distance into an alley and then down some steps into the basement of a building. He forced her back against a wall, went through her purse and dropped it to the ground. During this time she and her assailant were face to face, and she had a good opportunity to study his appearance. He forced her to lie down, and had sexual intercourse with her. He then ordered her to go one way and he went the other. She returned at once to her apartment building and told her landlady that she had been raped. The police were called and they took her first to the basement where the crime had taken place, where they found some of the contents of her purse, and they then took her to a hospital. It was stipulated that the examining physician

would testify that sperm were present. Two days later, on the evening of July 6, two police officers went to the defendant's apartment and asked him to come to the station with them, where he was identified by the prosecutrix from a line-up of six men.

The defendant testified in his own behalf and denied having committed the crime. He said that he had been in his apartment all that night with the woman with whom he lived, and her son. He testified that he had stayed up until 11:30 P.M., watching television, and that his "stepson" had come into the apartment at 10:15 and left an hour later. The woman, Willie Mae Williams, testified that she had been up with the defendant until after 11:00. On rebuttal, however, the prosecutrix, a police officer, and another witness all testified that in the presence of the defendant, at the police station on July 6, Mrs. Williams had said that she had gone to bed at 10:00 or 10:30 that evening, that she had no idea what the defendant had done after that time, and that she wasn't going to lie for the defendant. The testimony of Mrs. Williams's son was so contradictory and confused as to be of little value.

The identification by the prosecutrix was positive, and she had adequate opportunity to observe. Her testimony was corroborated by her prompt complaint, (see, *People* v. *Davis,* 10 Ill.2d 430, 436; *People* v. *Perez,* 412 Ill. 425; *People* v. *DeFrates,* 395 Ill. 439, 444,) by the stipulated testimony of the physician which substantiated her claim of recent intercourse, (see, *People* v. *Davis,* 10 Ill.2d 430, 442; *People* v. *Silvia,* 389 Ill. 346), and by the testimony of a neighbor who accompanied the police when they found articles from the prosecutrix's purse at the scene of the crime.

Defendant also points out that the prosecutrix admitted that she had prayed that she would not identify the wrong man, and that God would forgive her if she did, and he urges that her positive identification of the defendant must

therefore be discounted. The statement might have indicated uncertainty, as the defendant suggests. Equally, it might have reflected the concern of a sincere and scrupulous witness, anxious to tell the truth. The trial judge carefully inquired into this circumstance, and we see no reason to disturb the conclusion manifested in his finding that the guilt of the defendant was proved beyond a reasonable doubt.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*