**The People of the State of Illinois, Plaintiff-Appellee, v. Robert Smith and George Dean, Defendants-Appellants.**

Gen. No. 49,886.

First District, Third Division.

May 9, 1968.

■■■■■■■■■■

Donald M. Thompson, of Chicago, for appellants.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Zagel, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

The defendants, George Dean and Robert Smith, were charged with rape and aggravated kidnapping. They were tried without a jury and found guilty on each count. Dean was sentenced to concurrent terms of not less than ten nor more than twenty years in the penitentiary, while Smith was sentenced to concurrent terms of not less than eight nor more than fifteen years.

This appeal was filed in behalf of Dean and Smith. Dean completed his appeal while Smith permitted his to lapse. The evidence as to both defendants is closely interwoven and the points raised on appeal by Dean would apply to Smith as well. Inasmuch as Smith's appeal has not been dismissed for want of prosecution, we will review the case as if both were appellants.

The victims were two thirteen-year-old girls. On a Sunday evening in February, 1964, they and four other eighth-grade girls went to the recreation center of Our Lady of Sorrows Church, Chicago, to attend a dance. The girls arrived at the center about 8:25 p. m., went inside and waited in line to buy tickets to the dance. While they were waiting, a boy pulled the coat of one of the girls. When she told him to stop, he pushed her against the wall and told her he did not "take no mess from nobody." The girls tired of waiting in line, went outside and started to walk home. A car was parked near the entrance and some men were standing next to it. According to the prosecuting witnesses and two of the other girls, Dean and Smith were in the group.

■■■■■■■

The same boy who had accosted the first girl inside the center grabbed her and pushed her into the back of the car and onto the floor. Another boy picked up the second girl, carried her to the car and threw her in. There was some difficulty in starting the car and the girls screamed, hit the boys and struggled to get out. One of the girls opened the door but a boy slammed it shut, and in doing so closed it on Smith's thumb.

Meanwhile two of their girl friends ran into the center for assistance. They told a priest, Father Donald Gantley, what was happening and he came out just as the car was pulling away. He shouted for them to stop. He could not see who was in the car but heard screams coming from it.

In the car as it drove away from the center, according to the two prosecuting witnesses and a girl who witnessed the kidnapping, were George Dean (21 years old and a married man with two children), Robert Smith (age 22), Gene Autry Dean (age 16 and no relation to the defendant George Dean), Jerry Brown (17 years of age and the driver of the car) and the unidentified boy who pulled the girl's coat and who was never apprehended.

The car was driven to George Dean's basement apartment and the girls were marched inside. A male was sitting in front of the television set when the group entered.

In the apartment, the first girl was taken to the back bedroom by the unidentified boy. He threw her on the bed and removed her underclothes and, despite her yelling and protesting, had intercourse with her. After he finished five others had intercourse with her. She did not know who the next three were but she said that George Dean was the last and Robert Smith was next to last. She testified that the lights were on momentarily during intercourse with the last two.

The second girl, meanwhile, was thrown on the living room couch by Smith who took off her underclothes and was the first to have intercourse with her. She screamed and one of the others told her to shut up and hit her on

her head. She was forced to have sexual relations with six persons, including George Dean.

While this was going on, Father Gantley notified the police and joined them in searching for the car. The police finally found the parked car about 10:00 p. m. They questioned residents on both sides of the street. One of the officers noticed blinds going up and down and four or five males peering out the window of a nearby basement apartment. He saw lights being turned on and off and people running around. The police went to the rear and side entrances. The back door was ajar but it was slammed in their faces as they approached. They seized Gene Dean as he ran out the side door. Jerry Brown was arrested just inside the entrance. The girls, crying and hysterical, were standing in the bedroom door screaming, "They did it." The police forced open the bathroom door and caught Smith as he was attempting to go out the window. George Dean was found hiding under a woodpile in a room which adjoined the apartment. The other two participants had escaped and were never apprehended. Dean denied having had anything to do with the girls. Smith claimed that he arrived at the apartment after the police were there.

At the trial, George Dean again denied that he took part in the kidnapping and rape. He testified that he had been drinking since 2:00 p. m. that afternoon at his home and at his sister's. He left his sister's about 8:00 p. m. and returned home, where he continued to drink. Before anyone arrived there, he passed out in a chair in the living room while watching television and did not awaken until jerked to his feet by the police.

The defendant Smith denied that the girls had been kidnapped or raped. He admitted that he was with Gene Dean, Jerry Brown and two other fellows (not including George Dean) outside the recreation center about 8:00 p. m. He testified that he left the car for a few minutes and that when he returned the two girls

239

were seated on the laps of two of the boys. He said there was no screaming; that he was the only one who yelled and he did so because his thumb had been jammed in the car door. He said that the car was driven to George Dean's apartment, where he also lived, but claimed that this was done at his request because he was ill from drinking. He testified that everyone entered the apartment except himself. He remained outside for a few minutes because of feeling sick. When he entered he saw one of the girls sitting on the couch and knew the other one was in the back bedroom. He saw George Dean on a chair in the living room apparently drunk. After this, he did not see George Dean or anyone else or know what was going on because he went to the kitchen to get some food and fell asleep at the kitchen table. Upon awakening, he went to the washroom and was there when the police came. They seized him in the hallway outside the bathroom.

The first contention is that the evidence did not establish guilt beyond a reasonable doubt. To support his contention, Dean points to his own testimony which was corroborated by his sister and by Smith, Gene Dean and Jerry Brown. He also cites inconsistencies in the testimony of the State's witnesses. For example, on direct examination one of the girls testified that he was in the car at the recreation center but on cross-examination stated that he was sitting in the house when they entered. The second girl testified on direct examination that Smith was one of the boys who forced her friend into the car but on cross-examination stated that he was at Dean's apartment watching television when she arrived there. The officer who found George Dean under the woodpile admitted that at first he had him mixed up with Jerry Brown. Another officer testified that at the time of the arrest someone told him that Smith was the one who was hiding there.

■■■■■ In a nonjury trial it is the province of the trial court to determine the credibility of the witnesses and the weight to be accorded their testimony, and the court's judgment will not be disturbed unless it is based on unsatisfactory, improbable or insufficient evidence which leaves a reasonable doubt of the defendant's guilt. People v. Pendleton, 75 Ill App2d 314, 221 NE2d 112 (1966) ; People v. Cooper, 69 Ill App2d 18, 216 NE2d 168 (1966). There was clear and convincing evidence of the guilt of both defendants. The prosecuting witnesses' testimony about the kidnapping was corroborated by their friends and by Father Gantley. Their testimony about being raped was corroborated by what the arresting officers saw when they entered the apartment, by the victims' tearful and immediate accusations and by a hospital examination of their torn and bleeding vaginas. The discrepancies in their testimony are of little significance in comparison to their positive, unshaken and corroborated testimony that Dean and Smith kidnapped and raped them. The testimonial conflicts and the transposition of names are understandable in view of the fact that five men, all of whom were unkown to them and who did not use their correct names in speaking to each other, participated in the kidnapping and six in the rape.

It is next contended that the court erred in denying a motion for the production of statements made by one of the prosecuting witnesses to the police and to a juvenile officer. This motion was made and argued by the attorney for Smith.

The first girl to testify said on cross-examination that after the rape she was questioned at the police station. A policeman typed while she spoke but she was not given anything to read or sign. She also made a statement to a juvenile officer which she neither read nor signed. The attorney for Smith then moved for production of the statements and the following colloquy took place between the court and counsel:

241

"[Assistant State's Attorney] : As far as we know the only thing contained in our file is the police report, no statements made by anybody.

"The Court: He said there are no statements.

"[Attorney for Smith] : Your witness said—

"[Assistant State's Attorney] : She said she told the police what happened and they typed it; she never read it, she never signed anything.

"The Court: It's a police report."

After this brief exchange, Smith's attorney resumed his cross-examination of the witness.

The prosecution is required to furnish, on demand, pretrial statements made by witnesses "once the existence and relevancy of these statements has been established." The purpose is to permit defendants to ascertain whether the witnesses' statements differ with their testimony so that the statements may be used for impeachment. Before defendants are entitled to the statements it must be established that they are in the witnesses' own words or substantially verbatim recitals of what the witnesses have said. People v. Wolff, 19 Ill2d 318, 167 NE2d 197 (1960) ; People v. Scott, 29 Ill2d 97, 193 NE2d 814 (1963) ; People v. Neiman, 30 Ill2d 393, 197 NE2d 8 (1964). If the prosecution denies possessing such statements, the trial court can be asked to examine the State's file, or the police file (if it is in court or if it has been subpoenaed) to find out if there are statements which are in the witnesses' words. If there are, these must be given to the defendants for examination and possible use. People v. Wright, 30 Ill2d 519, 198 NE 2d 316 (1964) ; People v. Marshall, 74 Ill App2d 472, 221 NE2d 128 (1966).

In the case at hand, it was not established that the story the girl told the policeman or the juvenile

officer was taken down as she related it. No police officer was questioned about a statement. The juvenile officer was not called as a witness. The girl testified that she signed no statement and that none was shown to her. The prosecutor denied possessing a statement made by her. The court was not asked to examine the files. The court was not asked to examine the police report which the State said it had in its file to see if it was a report or a statement. Although the record does not show that the court examined the report, this may have been done. The court's description: "It's a police report," suggests that the court looked at it. The fact that there was nothing further said or done by Smith's attorney (or by Dean's attorney) after the court's positive and succinct observation, supports this inference. Further support is lent to the inference because the second girl also testified that the police typed what she said and that she gave a statement to the juvenile officer, but no request was made for the production of either of these. But whether the court examined the report or not, there was a complete failure by the defendants to establish the rudiments requisite to the production of any documents, police or juvenile. It is not clear if the court denied the production of the statements requested by the defendants but, if it did, no error was committed by the denial.

The judgment of the Criminal Division of the Circuit Court is affirmed.

Affirmed.

SCHWARTZ and SULLIVAN, JJ., concur.