THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES LILLY, Defendant-Appellant.

(No. 71-168; 

Third District—December 21, 1972.

*Rehearing denied January 11, 1973.*

STOUDER, P. J., concurring in part and dissenting in part.

James Geis, of Defender Project, of Ottawa, for appellant.

Roland Litterst, Assistant State's Attorney, of Peoria, for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

The defendant, James Lilly was found guilty of rape and indecent liberties after a jury trial in the Circuit Court of Peoria County. He was sentenced to the Illinois State Penitentiary for not less than 15 years nor more than 25 years on the rape charge only and this appeal is taken from that judgment.

The first issue raised by defendant is that the prosecution failed to prove him guilty beyond a reasonable doubt.

The victim, Cynthia Smiles testified that on the night of Dec. 16, 1970, between 8:30 and 9:00 she was 15 years old, that she had gone to Jane Brown's house earlier, that she left Jane's house at about 8:30 accompanied by her friends who walked with her part of the way but left her a few blocks from her home. Shortly thereafter a black man approached her, put his arm around her and held what she thought was a knife to her throat. She did not then see the knife but felt it in her neck. He put her in the front seat of his car and drove 8 or 9 miles to a dead end road. She kept asking him to take her home. He told her that if she was not quiet she would never see home again. After stopping the car he asked her to take off her blouse, she said no, and then she noticed the knife in his hand. It was 6 inches long. He said, "If you don't take your blouse off I'm going to stab you in the stomach and leave you out in the snow." She then took off her blouse, then for fear of being stabbed, the rest of her clothes, after being commanded to do so. After the act of intercourse there was some conversation which continued as he drove her back into the city and dropped her off about one block from her home. When she got home only her little sister was there. The little sister said Jane Brown had called and was worried so she called her. She then called her father and told him to come home. When her dad got home she told him what happened. He wrote it down and called the police. Officer Gamble came. She gave him a name. On the passenger side of the abductor's car there was a sticker with the name James Lilly on it. When he had pulled on to Knoxville Avenue she could see the sticker as the street lights shown through the paper. She could see the face of her abductor the whole time, for nearly an hour.

The evidence that the defendant was the attacker is overwhelming. Within two hours, at the hospital, she viewed pictures of 5 or 6 black males and pointed out James Lilly as her attacker. The next day at a line-up she positively identified James Lilly. At the trial she positively identified the defendant. After leaving the hospital from the physical examination she led the police to the scene of the attack. There the police took photographs of tire treads in the snow. One rear tire had snow treads and the other had regular treads. Meanwhile, but after James Lilly was identified by the photograph, he was arrested by the Peoria Police Department in a dark Chevrolet convertible (described by the victim) which bore an "applied for" sticker on the right front windshield as described by her. The car bore one rear snow tire and one rear regular tire. Experts testified at the trial that a comparison of the photographs of the impressions in the snow and the tires taken from the rear of James Lilly's car were similar in design and wear.

The victim was examined within two hours of the attack by Dr.

Burnett who testified that she had had recent intercourse, that there was male sperm present and there were abrasions in and about the vagina which could have been caused by lack of lubrication.

Expert testimony established seminal fluid in her clothing and in the defendants clothing as well as on the car seat.

Jane Brown testified that she had tried to call Cynthia three times. When Cynthia called her Cynthia was hysterical and said that she had been raped and that she had to call her father because he wasn't home.

Lisa Smiles, age 12, testified that Cynthia came home about 10:15, her shirt was inside out and she was crying, she called Jane Brown, then called her father.

Edward Smiles, the father, testified that Cynthia called him and asked him to come home immediately. That when he got home she told him the story of what had happened. He made a few notes about the make of the car, the description she gave him and the name she saw on the license application. He gave the notes to Officer Gamble. (More of this later).

The defendant did not testify but offered alibi witnesses.

■■ The testimony of one credible witness identifying the accused as the person who committed the offense, if positive, is sufficient to sustain a conviction for rape, and if such evidence is corroborated by other evidence it is clearly adequate to justify a conviction. *People v. Wilson,* 1 Ill.2d 178; *People v. Davis,* 10 Ill.2d 430; *People v. Murphy,* 124 Ill.App. 2d 71, and here even her uncontradicted testimony was corroborated. *People v. Canale,* 52 Ill.2d 107, 285 N.E.2d 133; *People v. Jackson,* 24 Ill.2d 226.

■■ Defendant argues that the victim had several opportunities to escape and that she did not struggle. On cross-examination the victim testified that she was in fear. An outcry by the prosecutrix where it is useless or where she is restrained by fear of violence is not required. *People v. Silva,* 405 Ill. 158; *People v. Smith,* 32 Ill.2d 88; *People v. Griggs* (1970), 131 Ill.App.2d 257, 266 N.E.2d 398.

■■ The real issue here was one of credibility of witness, and was therefore a jury question. *People v. Boatman,* 3 Ill.App.3d 652; *People v. Hanserd,* 125 Ill.App.2d 465; *People v. Fort,* 14 Ill.2d 491, 499.

During the direct examination of the prosecutrix the following occurred:

"Q. Now, tell the jury what happened as you drove back to town.

A. He made me sit next to him and he told me about how he had got a divorce from his wife and he talked about, he had raped another girl and she had gone home * * *

Defense Attorney: Objection.

The Court: Overruled.

\* \* \*

Q. Did he give any reason for what he had done?

A. Well, he said he was trying to get back at white people for what they had done to him.

Q. Did he elaborate on that?

A. He said that they had sent him to jail."

■■ Defendant contends that the admission of this testimony was prejudicial error. "The statements of the defendant was a part of the general conversation. It was admissible both as a part of the *res gestae* and also as an incriminating admission that force had been used \* \* \*." *People v. Kestian*, 335 Ill. 596, 601.

■■ The Supreme Court has stated that "evidence of other offenses is admissible when it forms part of the *res gestae* or shows or tends to show a particular intent or motive in the defendant's connection with the crime, provided the time which has elapsed between the crime charged and the offense concerning which the testimony is offered is not too remote." (I.L.P. Criminal Law, Sec. 293.) The rule has been applied in prosecutions for rape (*People v. Ardelean*, 368 Ill. 274, 280), where the court said, "\* \* \* merely because a full disclosure of the facts in this case shows Ardelean guilty of other crimes does not limit the scope of the investigation if they are all part of one continuous narrative."

The jury was tendered only three forms of verdict; guilty of rape, guilty of indecent liberties, and not guilty. Defendant now contends that it was the duty of the trial court to give a not guilty form of verdict for each charge.

■■■ We cannot entertain this claim because there was no request by the defendant that the form of verdict now suggested be given. The Supreme Court has remarked: "We have repeatedly announced the rule that the court is under no duty to give instructions not requested by counsel." *People v. Springs*, 51 Ill.2d 418, 283 N.E.2d 225.

On direct examination the victim's father testified that when his daughter related the facts to him he took notes. On cross-examination he said he wrote down on a slip of paper the make of the car and the description of it she gave him and the name she saw on the license application. He gave the notes to Officer Gamble. On motion of defense counsel the trial judge ordered production. Officer Gamble remembered the paper but could not recall what was done with it. None of the other officers connected with the case could recall the notes, the State's Attorney was unable to locate them and believed they were no longer in existence.

■■ The defense has cited *People v. Howze*, 1 Ill.App.3d 253, 273

N.E.2d 733, and *People v. Allen,* 47 Ill.2d 57, 264 N.E.2d 184. There is no question but that the notes were subject to discovery *if in existence,* the general rule being that "the prosecution is required to furnish on demand to the defendant for impeachment purposes specific statements in its possession made by a State's witness which have been established to exist and which are the witnesses own words or substantially verbatim. *People v. Neiman,* 30 Ill.2d 393, 397.

Here the court did not deny the defendant access to any available statements. Prior to trial the defendant filed a discovery motion which was allowed and there is no claim that there was not a good faith compliance with that order. The note here was to be used for impeachment. As was said in *People v. Howze, supra,* "Compliance with *Allen* requires the production of the statement if it is in existence." In both *Howze* and in *Allen* the trial court had denied efforts by the defense to ascertain the existence of the report.

At no time in the instant case did the defense request the court to examine the police file or to conduct a further hearing on the matter. In the *People v. Wright,* 30 Ill.2d 519, commencing on 527, the court gives a detailed discussion of the development of Illinois law on this point. There the court felt that under the circumstances of the case (A limited opportunity of victim to observe defendant) that the case be remanded to determine if the document existed. See *People v. Marshall,* 74 Ill.App.2d 472; *People v. Smith,* 95 Ill.App.2d 235.

■■■ In determining whether an accused has been prejudiced by the rejection or exclusion of evidence, so as to require a reversal of the judgment, this court will look to the entire record to see if the rejected evidence could have reasonably affected the verdict, and will refuse to disturb the judgment where guilt is shown beyond a reasonable doubt or where, upon the evidence the jury could not have reached a different verdict. (*People v. Wolff,* 19 Ill.2d 318.) In view of the overwhelming evidence it is our opinion that the jury could not have reached a different verdict than it did and that the inability of the defendant to see the notes did not operate to deny him a fair trial.

Defendant further contends that since the rape and the indecent liberties arose out of the same conduct the lesser offense should be set aside. In the instant case the trial judge specifically found that the defendant should be sentenced for only one of the offenses, the greater one, and in fact only sentenced for the crime of Rape.

In *People v. Ruiz,* 82 Ill.App.2d 184, cited by defendant the trial court imposed two concurrent sentences on the charges of Rape and indecent liberties, both of which related to the same occurrence. The case is clearly distinguishable in that two sentences were imposed. Since the

decisions of this court in *People v. Leggett,* 2 Ill.App.3d 962, 275 N.E.2d 651, and *People v. Short,* 4 Ill.App.3d 849, 281 N.E.2d 785, we have had the benefit of *People v. Brown,* 52 Ill.2d 94, 285 N.E.2d 1, where the Court stated, "In the case at bar, the charges of rape and indecent liberties grew out of one transaction. The act of sexual intercourse which constituted the rape of the prosecutrix also encompassed the indecent liberties offense. Under such circumstances, the prosecutor was not required to elect with reference to the charge on which he would seek conviction. (*People v. Gray* (1949), 402 Ill. 590, 592-593, 85 N.E.2d 2; *People v. Tinnell* (1944), 385 Ill. 537, 540-542, 53 N.E.2d 427.) The jury returned separate verdicts finding the defendant guilty of the offenses of rape and indecent liberties. However, the judgment order under which the defendant was sentenced failed to specify the offense or offenses for which he was sentenced. Only one sentence should have been imposed for the two offenses which arose from the act of sexual intercourse, and such sentence should have been for the greater offense—the rape. (*People v. Duszkewycz* (1963), 27 Ill.2d 257, 260-261, 189 N.E.2d 299.) Thus, the trial court erred in not specifying the offense for which the sentence was imposed."

■■ The Court did not reverse the indecent liberties conviction, it merely modified the judgments to specify that sentence be entered for the crime of rape only. Also see *People v. Perry,* 47 Ill.2d 407, where the Supreme Court said, "We find this argument entirely without merit," and see *People v. Russo,* 52 Ill.2d 425, 288 N.E.2d 412, where the Court remanded with directions to vacate the sentence only.

For reasons stated herein the judgment of the Circuit Court of Peoria County is affirmed.

Judgment affirmed.

SCOTT, J., concurs.

Mr. PRESIDING JUSTICE STOUDER concurring in part, dissenting in part:

I join with the opinion of the majority in affirming defendant's conviction and sentence for the crime of rape. I believe however that the judgment of conviction for the offense of indecent liberties should be reversed.

At the outset it should be noted that no question is raised concerning the often troublesome problem of whether two offenses arise from the same act. The trial court, both of the parties to this appeal and the majority of the court concede the two offenses of rape and indecent liberties did arise from the same act. (*People v. Duszkewycz* (1963), 27 Ill.2d 257, 189 N.E.2d 299, and *People v. Ruiz,* 82 Ill.App.2d 184, 226 N.E.2d 438.)

Nor is there any question raised with respect to the right of the State to submit both charges to the jury for its consideration. The description and characterization of the same act or conduct in terms of multiple criminal offenses is within the discretion of the State's Attorney and is independent of any particular or special criminality of the conduct. In the instant case defendant was charged with two offenses arising from the same act or conduct. Several other offenses could have been charged based on the same conduct and could have been supported just as readily as the two offenses in fact charged. For instance the defendant could have been charged with kidnapping, assault, aggravated assault, battery or perhaps even the illegal use of a weapon. Yet the offense of rape and punishment for its component misconduct includes all of the varied aspects of such other misconduct.

If there be judgments of conviction for more than one offense growing out of the same act even though only one sentence be imposed and that for the greater offense, the question remains as to the disposition of the lesser offense. When multiple charges arising from the same act or conduct result in finding of guilt of more than one offense whether by plea or determination of a jury or court it seems to me that the same rationale which authorizes a sentence only for the most serious offense is equally applicable and persuasively supports the conclusion that the conviction or judgment of conviction for the lesser offense ought not be entered or if entered should be vacated. In saying that a criminal defendant should not be sentenced for more than one offense growing out of the same act or conduct we are in effect saying that punishment under such circumstances is neither fair, just nor warranted. In saying that double punishment for the same occurrence or act is not justified we are recognizing that the result is based on the initial discretion of the State and its desire to cover all contingencies rather than any claim of enhanced criminality or aggravated conduct. By requiring only that no sentence be imposed on the lesser offense we would continue in effect, both legally and in common parlance, the conclusion that the defendant has been convicted of multiple, apparently independent, felonies while the rationale supporting the rule of one sentence only is based on the contrary belief.

*People v. Leggett,* 2 Ill.App.3d 962, 275 N.E.2d 651, and *People v. Short,* 4 Ill.App.3d 849, 281 N.E.2d 785, are based on the premise that reversing the conviction for the lesser offense growing out of the same conduct is a complimentary application of the main rule even though the issue has not been specifically discussed in Supreme Court decisions. In part the resolution of this issue has depended upon hints in prior precedents that may be garnered from the dispositional provisions of cases involving the principle issue, whether the multiple charges did arise from

54

the same act or conduct. For instance in *People v. Duszkewycz* (1963), 27 Ill.2d 257, 189 N.E.2d 299, the judgment regarding the offense of rape was affirmed and the judgment regarding the lesser offense, incest, was reversed. To the same effect are *People v. Whittington*, 46 Ill.2d 405, 265 N.E.2d 679, and *People v. Ruiz*, 82 Ill.App.2d 184, 226 N.E.2d 438.

*People v. Brown*, 52 Ill.2d 94, 285 N.E.2d 1, cited in the majority opinion as supporting a conclusion contrary to that reached in *Leggett* and *Short*, likewise bears on this issue only to the extent of an intimation which might be derived from the dispositional provision of the opinion. As is disclosed by the opinion in *Brown*, the only issue of multiple offenses arising from the same act was concerned first with whether the trial court should have directed a verdict in favor of the defendant on the lesser charge, the opinion concluding in the negative, and, second, that the sentence was not clearly imposed for the greater offense. Consequently the Court modified the "judgments" by providing that the sentence was applicable only to the offense of rape and affirming the "judgments" as so modified. Reliance on dispositional provisions such as those either in *Duszkewycz* or *Brown* is at best of doubtful support for either side of this issue and the issue deserves resolution on its merits. As I have suggested I believe this issue should be resolved in accord with the general principle that the same act or conduct should be punished only once and that any record or procedure which detracts from or is contrary to this rule should be avoided.