THE STATE OF OHIO, APPELLEE, v. SPEARS, APPELLANT.

(No. 37384—Decided May 18, 1978.)

*Mr. John T. Corrigan*, prosecuting attorney, for appellee.

*Mr. Ronald B. Bakeman*, for appellant.

KRUPANSKY, J. Defendant-appellant Donald Spears (hereinafter defendant) was found guilty of Kidnapping, R. C. 2905.01, two counts of Rape, R. C. 2907.02, and Robbery, R. C. 2911.02, after trial to a jury. On November 24, 1976, defendant was sentenced to concurrent terms of five to twenty-five years on the kidnapping and rape counts and two to fifteen years on the robbery count.

Defendant timely filed a notice of appeal and presents a single assignment of error, to wit:

"The fundamental constitutional rights of the appellant guaranteed pursuant to the Fifth and Fourteenth Amendments to the United States Constitutional [*sic*] were violated by the introduction of slanderous attacks on the appellant's character alleging prior criminal convictions and prior imprisonment in the state's case-in-chief, and by the ruling of the trial court permitting the prosecution to emphasize this evidence in closing argument since the ac-

cused chose not to testify or in any manner raise the issue of character.''

Ms. Allen, a witness for the prosecution, testified as follows:

On May 18, 1976, Ms. Allen, the twenty-six year old victim who had worked as a barmaid for the past five years, drove to Jack's Bar located at East 93rd Street and Union Avenue to pick up her paycheck. She arrived at the bar at approximately 8:45 p. m. and parked a borrowed blue 1973 Mercury in a nearby parking lot. While she was talking to a male individual, defendant introduced himself as Ken and asked Ms. Allen and the other individual if they were interested in purchasing a television set. Ms. Allen responded in the negative; defendant then requested her to drive him to the vicinity of East 103rd Street and Miles Avenue. She refused. After having received her wages in cash, Ms. Allen returned to her automobile in the parking lot. Defendant approached her from the rear and with threats of deadly force instructed her to get into the car and drive. Once in the car, Ms. Allen drove down several side streets until defendant instructed her to exit the car near a wooded area. After walking into the woods, defendant forcibly robbed Ms. Allen of her money, car keys and watch. Defendant, with repeated threats of physical violence, forced Ms. Allen to engage in sexual intercourse and fellatio; during this time she "sweet talked" defendant and suggested they go to a motel where she hoped to escape or get help.

Defendant drove the car to a motel; he and Ms. Allen walked through a bar-restaurant area and registered for a room. When he and Ms. Allen were in the room, he again forced Ms. Allen to engage in sexual intercourse. After they both left the room and returned to Ms. Allen's automobile, defendant told her that he would return her car once they arrived at East 103rd Street and Miles Avenue.

Defendant stopped the car in front of a delicatessen and told Ms. Allen to go into the store and buy him a bottle of wine. Once in the store Ms. Allen told the manager she had been raped and robbed, she gave the manager the

license number and make of the car and asked that the police be called. In spite of the offers of assistance by the manager and out of fear that defendant would enter the store and shoot her, Ms. Allen returned to the car. Defendant resumed driving the car and then stopped in front of another store and instructed Ms. Allen to purchase for him a pack of cigarettes. While Ms. Allen was in the store, defendant drove away. Ms. Allen then ran to a nearby bar, Teal's Lounge, and asked someone to call the police.

Ronald Jones, who was in Teal's Lounge, testified that Ms. Allen was crying and hollering she had been raped and robbed when she entered the bar and that he called the police.

Dr. Mallawany, a chief resident at St. Luke's Hospital where Ms. Allen was taken, testified he examined her in the early morning hours of May 19, 1976. His examination revealed the presence of non-motile "well-preserved" sperm and semen and the redness around Ms. Allen's neck could have possibly resulted from the application of pressure.

Patrolman Flask of the Cleveland Police Department testified that while he was on basic patrol, he observed a 1973 Mercury which matched the description received from a radio broadcast. Patrolman Flask further testified the automobile was accelerated in total disregard of the police car's flashing lights and operating siren. A high-speed chase ensued which ended with defendant crashing into a parked police cruiser. Patrolman Flask identified defendant as the person who was driving the 1973 Mercury.

Appellant contends his conviction was predicated upon inadmissible evidence which the prosecutor commented upon during closing argument. Appellant argues his constitutional rights, guaranteed under the Fifth and Fourteenth Amendments, were violated because he was penalized for exercising his Fifth Amendment right to remain silent.

Defendant contends the inadmissible evidence was elicited on direct examination of Ms. Allen during the following colloquy:

"Q. On the way over there [the wooded area] he immediately got out of the car, and was there anything said between you and him at that time?

"A. Anything said?

"Q. Yes, did he say anything to you or talk to you?

"A. He was telling me about, I think he was from California or Florida and that he lived there. I can't remember.

"He said Florida and I forgot what he said, and he was just talking and he said something about that he had been convicted—

"Mr. Bakeman: Objection, Your Honor.

"The Court: Overruled.

"Q. Go on.

"A. That he has been in jail before, and that is what he said.

"He said that he had a record before—

"Mr. Bakeman: Objection, Your Honor, and may I approach the Bench?

"The Court: Overruled."

During his closing argument, the prosecutor made the following comment:

"He terrorized that young girl. That's what happened, and thank God she was a barmaid. She was smart enough to talk to him and knew what he was going to do to her. He told her what he was going to do in the woods. He was in prison before, and 'I'm going to blow you away.'

"Mr. Bakeman: Objection, Your Honor.

"The Court: Overruled."

The issue presented is whether an item of evidence which is logically relevant and competent for one purpose should be inadmissible because it is incompetent for another purpose. Ms. Allen's testimony as to what defendant told her of his past criminal record and incarceration was relevant and competent to demonstrate the effect it would have upon her, that is, to instill fear. Also demonstrated by the statement was the method or manner by which defendant threatened her during the course of his criminal acts.

The above-quoted item of evidence would be incompetent when produced by the prosecution as a part of its case-in-chief, for the purpose of demonstrating defendant's commission of another crime wholly independent of the offense for which he was on trial.* *State* v. *Adams* (1978), 53 Ohio St. 2d 223; *State* v. *Lytle* (1976), 48 Ohio St. 2d 391; *State* v. *Curry* (1975), 43 Ohio St. 2d 66; *State* v. *Burson* (1974), 38 Ohio St. 2d 157; *State* v. *Hector* (1969), 19 Ohio St. 2d 167. As a general rule, "[u]nless the accused asserts his own good character and offers testimony tending to prove it, it is never competent for the state to offer evidence of his general bad character or reputation." *Whiteman* v. *State* (1928), 119 Ohio St. 285, 289.

Contrary to the contentions of defendant, the testimony of Ms. Allen concerning what defendant said to her respecting his past criminal record during the course of his criminal acts against Ms. Allen is competent evidence as a part of the *res gestae*. In the simplest of terms, *res gestae* means the facts which form the environment of a litigated case. *State* v. *Brown* (1960), 85 Ohio Law Abs. 85. Statements of an accused made to the victim of his criminal conduct are admissible under the "verbal acts" doctrine of *res gestae*. *State* v. *Moore* (1958), 78 Ohio Law Abs. 380.

While there are no reported Ohio decisions addressing directly the within issue, the courts of several other jurisdictions hold the testimony by the victim, that accused stated he had a past criminal record and had spent time in jail, is admissible as part of *res gestae*.

---

*In the instant case, Ms. Allen never stated for which offense defendant allegedly had been convicted and incarcerated. The mere assertion of the commission of some unspecified offense with an unspecified degree of culpability, committed at some unstated time in the past, does not fall within the ambit of R. C. 2945.59. Such an assertion lacks any tendency of demonstrating, contrary to the prosecution's contention, an accused's motive or intent, the absence of mistake or accident on his part, or his scheme, plan, or system in doing an act which is material.

In *Roddy* v. *State* (1970), 254 Ind. 50, 257 N. E. 2d 816, the Indiana Supreme Court held the statement attributed to defendant by prosecutrix that "I hate to do this to you but I am not going back to prison" was not inadmissible hearsay as tending to introduce evidence of other crimes, but was part of the *res gestae,* in that defendant had just committed multiple rapes on his victim and was in the act of not only kidnapping the prosecutrix but threatening her with bodily harm  In determining that this testimony was admissible, the Indiana Supreme Court reasoned, at 257 N. E. 2d 818 as follows:

"The mere fact that he [defendant] uttered prejudicial words with reference to his prior prison record does not give him a privilege to exclude those words in a trial in which he is charged with using force and threats, even to the point of threatening murder.  To permit an exclusionary rule such as urged by the appellant in this case would grant immunity to the most vicious criminals who saw fit to exploit their past viciousness and criminality in threats against their victims."

The same result was reached in *Christesson* v. *State* (Tex. Crim. App. 1962), 353 S. W. 2d 218, where the court held that a defendant's *res gestae* statement during the beating of his victim that he had been in the "pen" was admissible. *See also Lamberson* v. *State* (Tex. Crim. App. 1974), 504 S. W. 2d 894.

*People* v. *Lilly* (1972), 9 Ill. App. 3d 46, 291 N. E. 2d 207, exemplifies such testimony.  The court ruled admissible, as part of the *res gestae* and also as an incriminating admission that force had been used, the testimony of prosecutrix who stated that during an automobile trip following an alleged rape, defendant told her that he had raped another girl; the reason he had done so was he was trying to get back at white people because they had sent him to jail.

In *Carpenter* v. *State* (Okla. Crim. App. 1975), 530 P. 2d 1049, the court also held admissible as part of the *res gestae* the testimony of a rape victim pertaining to statements made by defendant while committing rape that

he had just gotten out of the penitentiary and did not care if he went back.

The statement or conversation of defendant in this case was voluntary. The threat was made by him against his victim. The evidence was part of the *res gestae*. Accordingly, the trial court properly overruled the objections of defendant.

The prosecutor committed no error by commenting in closing argument upon the testimony to which objection was made since it was admissible evidence.

*Judgment affirmed.*

STILLMAN, P. J., and DAY, J., concur.