16 F.3d 414
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
George Wilfong WITHERSPOON, a/k/a Spookie, Defendant-Appellant,
and
UNITED STATES of America, Plaintiff-Appellee,
v.
Alphanso A. WRIGHT, Defendant-Appellant.
 Nos. 92-5585, 92-5586.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 1, 1993.
Decided: Jan. 10, 1994.
 
 Appeals from the United States District Court for the Western District of North Carolina, at Statesville. Graham C. Mullen, District Judge. (CR-91-35-ST-MU)
 ARGUED: Warren Thomas Portwood, Jr., Hickory, North Carolina, for Appellant Witherspoon;
 Charles Robinson Brewer, Asheville, North Carolina, for Appellant Wright.
 Harry Thomas Church, Assistant United States Attorney, Charlotte, North Carolina, for Appellee.
 ON BRIEF: Jerry W. Miller, United States Attorney, Charlotte, North Carolina, for Appellee.
 W.D.M.C.
 AFFIRMED.
 Before RUSSELL, WIDENER, and HALL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Following a five-day trial, appellants George Wilfong Witherspoon and Alphanso Wright were convicted of conspiracy to possess and possession with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. Secs. 846 and 841(a)(1). They were sentenced, respectively, to 240 and 235 months imprisonment. Alleging numerous errors in the conduct of the trial, each seeks to have his convictions reversed. Finding no error, we affirm.
 
 I.
 
 2
 Witherspoon and Wright were key participants in a drug ring operating out of Lenoir, North Carolina. In 1989, Wright arranged several trips to New York City to buy cocaine, which he, Witherspoon, and their associates would resell in Lenoir.
 
 
 3
 In November 1989, Wright made the New York trip with Sean Patterson and George Walter Witherspoon, a/k/a "Daddy George," appellant Witherspoon's father. Wright purchased six kilogram-blocks of cocaine and placed them in a suitcase. Daddy George then took the
 
 
 4
 suitcase on a bus back to Greensboro, North Carolina, where, acting on an informant's tip, the police were awaiting his arrival.
 
 
 5
 Officers from the Caldwell County Sheriff's Department and Lenoir police watched three persons in a 1981 Lincoln meet Daddy George at the bus terminal. The driver, Steve Walton, took the suitcase from Daddy George and placed it in the Lincoln's trunk; Walton then got back into the car with Daddy George and the other occupants, Yvonne Linebarger and Patty Wright (appellant Wright's wife), to drive back to Lenoir.
 
 
 6
 The police followed the Lincoln and stopped it when it reached the Lenoir city limits. The officers obtained the driver's consent to search the trunk, opened the suitcase, and found the cocaine. All of the car's occupants were arrested; the subsequent investigation led to the arrests of Witherspoon, Wright, and others alleged to have been involved in the scheme.
 
 
 7
 Witherspoon and Wright were tried jointly with Terry Felder. Though Felder testified on his own behalf, neither Witherspoon nor Wright took the stand. The jury found both Witherspoon and Wright guilty as charged in the indictment, but were unable to reach a verdict regarding Felder.
 
 II.
 
 8
 The appellants maintain that Felder's counsel, during his closing argument, trod upon their constitutional privilege against self-incrimination by repeatedly and impermissibly commenting on their failure to testify. At one point, Felder's counsel argued on behalf of his client:
 
 
 9
 Although the Judge will tell you that he did not have to put on evidence, he did what any normal, reasonable human being would have done. And what every one of you would have done. Human nature. Falsely accused, I'm going to tell these folks about it. I can't sit silent about this. And I'm going to tell you that I wasn't involved and I'm going to tell you the few things I did do.... We want you to know that even though the Government did not prove this case beyond a reasonable doubt, Terry Felder wanted to convince you folks of his innocence even though he didn't have to do anything. He couldn't sit silent, and he testified, and he brought up witnesses.
 
 
 10
 Counsel failed to object to these and other, less indiscrete, remarks made during Felder's closing on Friday afternoon of the trial. The matter was not brought before the trial court until the instruction conference on Monday morning, and only then as the basis of a motion for mistrial, which was denied. Because the appellants failed to object to Felder's closing argument, our review is limited to plain error. Fed.R.Crim.P. 52(b).
 
 
 11
 In order to find plain error under Rule 52(b), we must (1) identify an error (2) that is plain, (3) affects substantial rights, and (4) "seriously affects the fairness, integrity or public reputation of judicial proceedings." United States v. Olano, 113 S.Ct. 1770, 1776 (1993) (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)); United States v. Moore, No. 93-5130, 1993 U.S.App. LEXIS 32176, at * 16 (4th Cir. Dec. 10, 1993); United States v. Brewer, 1 F.3d 1430, 1434-35 (4th Cir.1993); see United States v. Jarvis, 7 F.3d 404, No. 91-5169, 1993 U.S.App. LEXIS 27137, at * 24-* 27 (4th Cir. Oct. 19, 1993). Assuming, arguendo, that Felder's counsel's remarks satisfied the first two requirements of the Olano test, the appellants are nevertheless not entitled to relief because the district court's remedial jury instructions cured any detrimental effect Felder's closing argument may have had on his codefendants.
 
 
 12
 In United States v. Whitehead, 618 F.2d 523, 527-28 (1980), we held that sufficient instructions can cure the danger that a jury might construe the remarks of counsel as a comment upon a defendant's failure to testify. Inasmuch as it is far from certain that the jury in this case necessarily construed Felder's counsel's remarks as commenting upon the appellants' silence, the district court's instructions were more than sufficient. In fact, once the appellants made their position known, albeit belatedly, the court instructed the jury as follows:
 
 
 13
 The defendants Alphanso Wright and George Wilfong Witherspoon have elected not to testify in this case. The Court instructs you that each has a constitutional right not to take the stand and testify and not to speak at all or offer any evidence, the burden of proof being entirely upon the Government. You may draw no adverse inferences of any kind from their exercise of their privilege not to testify. This right is a fundamental one in America's criminal law and one which cannot be disregarded by the jury at its pleasure.... It has been reported to me from time to time that jurors occasionally, after having gotten that instruction, go into the jury room and the first thing they talk about is the fact that a defendant did not testify. I instruct you [that] you may not do that. You are to remember that the burden of proof never shifts from the Government. The defendants don't have to prove anything, and if a defendant exercises his constitutional right to say, "Members of the jury, I rest on the presumption of innocence and the allocation of the burden of proof," then you have to decide whether the Government's proved its case or hasn't, and that's all you think about. (emphasis supplied)
 
 
 14
 The district court's strong admonition satisfies us that counsel's remarks had no prejudicial effect upon the jury's deliberations. As a result, no substantial right of the appellants was affected, and the trial was not rendered fundamentally unfair. Because the appellants have therefore failed to demonstrate the existence of the third and fourth Olano requirements with regard to Felder's closing argument, reversal for plain error is not warranted. We now turn to issues that have been properly preserved on appeal.
 
 III.
 
 15
 Detective Mike Winn testified that he and other Caldwell County and Lenoir city police officers were surveilling the Greensboro bus terminal because of an informant's tip that the appellants were among those trying to "get in a large quantity of cocaine into Lenoir." The appellants contend that this testimony was inadmissible hearsay. We believe that it was not.
 
 
 16
 An extrajudicial statement is hearsay if it is "offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Detective Winn's testimony regarding his informant's statement was not offered as evidence of the defendant's guilt, but for the limited purpose of explaining why a government investigation was undertaken. When so offered, such statements are not hearsay. United States v. Love, 767 F.2d 1052, 1063 (4th Cir.1985).
 
 
 17
 For the purpose of proving the conspiracy charged in the indictment, the government was entitled to show how the conspiracy operated. Relevant to that issue was the defendants' detailed plan for transporting the cocaine back to Lenoir. Once it was revealed that the drugs had passed through Greensboro, and that the local police had followed the defendants from there all the way back to Lenoir, a distance of over 100 miles, the jury could be told why the police had taken such an unusual action. Presenting background information to the jury reduces the likelihood that it will incorrectly fill in a factual gap and render a potentially erroneous verdict. The district court correctly allowed the jury to hear the challenged testimony.
 
 IV.
 
 18
 The appellants argue that the testimony of Patterson, Daddy George, and Timothy Sherrill regarding prior cocaine excursions to New York was inadmissible "bad act" evidence under Fed.R.Evid. 404(b). We agree with the appellants that the evidence regarding the drug ring's activities outside the narrow time described in the indictment[1] is to be evaluated under Rule 404(b), but we disagree that the admission of this evidence necessitates the reversal of their convictions.
 
 
 19
 Rule 404(b) states that evidence of other crimes, wrongs, or acts is not admissible for the purpose of proving a person's character. However, the rule also contemplates that such evidence may be admissible for "other purposes." We have previously characterized Rule 404(b) as being "inclusive," admitting all crimes or acts relevant to a trial issue "except that which tends to prove only criminal disposition." United States v. Masters, 622 F.2d 83, 85 (4th Cir.1980). In Masters, we accepted as legitimate the "other purpose" of offering evidence to prove the immediate context, sometimes called the res gestae, of the case. Id., at 86. When the proffered character evidence is "so much a part of the setting of the case and its 'environment,' that its proof is appropriate in order 'to complete the story of the crime,' " its admission is not violative of Rule 404(b). Id. (quoting State v. Spears, 387 N.E.2d 648, 651 (Ohio App.2d 1978) and United States v. Howard, 504 F.2d 1281, 1284 (8th Cir.1974)).
 
 
 20
 To the extent that the challenged testimony went beyond being direct evidence of the defendants' participation in the conspiracy during November 1991, it was admissible as part of the immediate context of the crime charged. In order to prove that the conspiracy ordered the transport of six kilos of cocaine in November, the government could provide the jury with some background information regarding the conspiracy's scope and method of operation. The district court committed no error by permitting the government's witnesses to so testify.
 
 V.
 
 21
 The appellants have also claimed as reversible error that the venire did not comprise a racially representative cross-section of the community, that the government failed to provide them with copies of Daddy George's plea agreement and sentencing transcript, that a variance existed between the charges contained in the indictment and the proof at trial, and that the district court impermissibly rushed the presentation of their case. We address each contention in turn.
 
 A.
 
 22
 Jurors in federal trials must be selected according to the procedures outlined at 28 U.S.C. Sec. 1861 et seq. Section 1867 prescribes the methods for litigating violations of these procedures; in criminal cases, a defendant must move to dismiss the indictment or stay the proceedings against him either before the voir dire begins, or within seven days after he has discovered, or could have discovered through due diligence, sustainable grounds for challenging the selection process. 28 U.S.C. Sec. 1867(a). Compliance with section 1867 is an absolute prerequisite to maintaining a challenge to the jury composition. See id., at Sec. 1867(e) ("[t]he procedures prescribed by this section shall be the exclusive means by which a person accused of a Federal crime ... may challenge any jury on the ground that such jury was not selected in conformity with the provisions of this title."). Failure to so comply waives any objection. United States v. Webster, 639 F.2d 174, 180 (4th Cir.1981).
 
 
 23
 The appellants did not comply with section 1867(a); they did not move to stay the proceedings until after voir dire had begun, and they took no action within seven days of receiving access to the jury lists, through which they could have discovered the racial composition of the venire. They have therefore waived any challenge to the selection process. Moreover, the appellants cannot maintain a constitutional challenge to the jury array outside the strictures of section 1867. United States v. Green, 742 F.2d 609, 612 (11th Cir.1984).
 
 B.
 
 24
 Prior to trial, the government was ordered, pursuant to Giglio v. United States, 405 U.S. 150, 154-55 (1972), to inform the appellants of any plea agreements the government had reached with its witnesses in exchange for their testimony, and to provide the appellants with any evidence tending to discredit or impeach the credibility of any of its witnesses. With regard to Daddy George, the government steadfastly maintained, in response to repeated defense inquiries bordering on accusations, that no plea agreement had been reached and no otherwise discrediting or impeaching evidence existed.
 
 
 25
 Finally, after jury selection but before trial, counsel for the government stated for the record that his "understanding" was that Daddy George's lawyer had been informed that the government would make a substantial assistance motion, under U.S.S.G.Sec. 5K1.1, at Daddy George's sentencing in return for his testimony against the appellants. Though this information was not provided in direct response to the appellants' request for discovery, it was revealed to them in plenty of time to be used during cross-examination. Therefore, the government's initial failure to comply was not violative of the appellants' due process rights. United States v. Smith Grading and Paving, Inc., 760 F.2d 527, 532 (4th Cir.1985).
 
 
 26
 However, Daddy George testified during cross-examination that he had entered into no agreements with the government in exchange for his testimony, specifically denying that he had been promised the benefit of a substantial assistance motion. The gravamen of the appellants' complaint is that its cross-examination was prejudicially less effective because counsel had no access to any extrinsic evidence contrary to Daddy George's testimony--either a transcript of his Rule 11 hearing or a writing specifying the arrangement--that might have allowed counsel to "prove up" his impeachment.
 
 
 27
 The problem with the appellants' argument with regard to the Rule 11 transcript is that Daddy George's Rule 11 testimony was consistent with that at trial, that is, he contended that there was no agreement of any sort. Thus, the transcript had no impeachment value. With regard to any document the government might have provided detailing the "actual" arrangement between the government and Daddy George, our review of the record raises substantial doubt in our minds that, despite government counsel's purported "understanding," any agreement had been worked out prior to the trial, or if it had, that Daddy George had been informed of its specifics. In any event, defense counsel's cross-examination of Daddy George on this issue was, in our view, both thorough and effective. We do not believe that it could have been more effective even if defense counsel had been allowed access to some phantom document, its existence and supposed contents mere speculation.
 
 C.
 
 28
 Count Two of the indictment charged the appellants with possession with intent to distribute cocaine. The appellants argue that, because there was no evidence adduced at trial showing that they ever physically possessed the cocaine, there was a variance between the crimes charged and those proved which mandates a reversal of their conviction on Count Two. This argument is meritless.
 
 
 29
 It is well established that all conspirators are liable for crimes committed by any member of the conspiracy in furtherance thereof. Pinkerton v. United States, 328 U.S. 640 (1946). Once the government had proved the conspiracy to possess with intent to distribute (as charged in Count One), proved that the appellants were members of the conspiracy, and proved that at least one of the other conspirators had actually possessed cocaine with the intent to distribute in furtherance of the conspiracy, the jury had all the ammunition it needed to convict the appellants of possession with intent to distribute under Count Two. Nevertheless, the appellants contend that because Count Two was not couched in terms of being in furtherance of a conspiracy, a variance occurred which precludes conviction on that count.
 
 
 30
 Only a material variance that affects the "substantive rights" of the accused is harmful error. United States v. Morrow, 925 F.2d 779, 781 (4th Cir.1991). In determining whether a defendant's substantive rights have been affected, "the primary consideration is the role of the indictment in informing the defendant of the charges in order that he may prepare his defense and in protecting the defendant against another prosecution for the same offense." Id.
 
 
 31
 The Pinkerton principle, coupled with the self-evident observation that the government could not prove that either Witherspoon or Wright had actually or constructively possessed the cocaine, negates any possibility that the appellants were prejudiced in the preparation of their defense as a result of the indictment's phraseology. Likewise, the indictment's allegedly ambiguous language does not pose any danger that the appellants will again be prosecuted for the same offense.[2]
 
 D.
 
 32
 Finally, the appellants allege that the district court made several comments throughout the trial, in essence asking both sides to streamline their presentations, that might have conveyed the impression that the jury should rush through its deliberations. The appellants cite no authority supporting its proposition that control of a trial's pace is not within the sound discretion of the court. Nevertheless, our review of the record reveals that the district court took pains to correct any mistaken impression the jury might have had by repeatedly informing it that it should take the time necessary to reach a proper decision.
 
 CONCLUSION
 
 33
 Based upon a careful review of the record and the arguments presented by counsel, we can discern no reversible error in the conduct of the appellants' trial. The judgment of the district court is therefore affirmed.
 
 AFFIRMED
 
 
 [1]
 Count One of the indictment charged the defendants with conspiracy to possess and distribute "[i]n or about November 1989"; Count Two charged possession with intent to distribute and aiding and abetting "[o]n or about November 14, 1989."
 
 
 [2]
 The appellants also claim that the evidence was insufficient to prove that they aided and abetted each other or other indicted conspirators in possessing the cocaine, as alleged in Count Two. The point is moot, because the appellants' conviction on Count One rendered it unnecessary for the government to prove aiding and abetting in order to get a conviction on Count Two. Once the government proved the conspiracy contained in Count One, the appellants' status as conspirators, and the conspiracy's possession of the cocaine, the jury was justified, under the Pinkerton principle, in convicting the appellants of possession with intent to distribute under Count Two. Therefore, the appellants can claim no prejudice resulting from the government's purported failure to prove aiding and abetting