(No. 19485.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* STANLEY KESTIAN *et al.* Plaintiffs in Error.

*Opinion filed June 19, 1929—Rehearing denied October 5, 1929.*

W. G. ANDERSON, and CHARLES L. DALY, for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and JAMES ·B. SEARCY, (EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE DIETZ delivered the opinion of the court:

The plaintiffs in error, Stanley Kestian and John Conrad, were indicted in the criminal court of Cook county for the rape of Gertrude Tomszewski .on the night of the 4th and 5th of June, 1928. The jury returned separate verdicts finding each of them guilty and fixing the punishment of each at five years in the penitentiary. They were sentenced accordingly. Their contentions here will be stated in the course of the opinion.

Gertrude Tomszewski was twenty years of age and lived with her mother and step-father at 2612 West Twenty-fifth street, in the city of Chicago. Conrad played baseball and Kestian kept the score-board on the high school grounds near Kosciusko Park. She met Kestian at that place on the afternoon of June 4 and he introduced himself as

Keyes. He told her that Conrad was his friend and invited her to a dance that evening, saying that Conrad, with another girl, would go along. She accepted the invitation and was told that they would call for her at her home about 8:30. They arrived at her home in an automobile about that time but Conrad and Kestian were alone. Kestian entered the home and was introduced as Keyes to her mother, to whom he said that he would take good care of the girl and bring her home early. When he and the girl reached the automobile she noticed that Conrad did not have the other girl with him. She stated that she did not want to go with Conrad and Kestian alone. They told her that they had a lot of friends at the dance hall where they were going and that she need not worry. She then agreed to go with them. The automobile was a closed touring car for four people. Conrad sat in front and drove while Kestian and the girl sat in the back. On the way either Conrad or Kestian produced a half-pint bottle of wine, from which they drank. The wine was offered to her. She testified that she refused to drink. They testified to the contrary. About half way they stopped at a soft drink parlor and ordered three glasses of beer. She testified that she took only a sip. They testified that she drank a full glass. It was nearly 9:00 when they reached the dance hall, where she had four dances with each. She testified, "We danced close, like everybody else dances." The weather was warm. About 11:00 she and Kestian went outside. At his suggestion they sat in the back seat of the automobile, where he began kissing and putting his arms around her and attempted to pull off her bloomers. She testified that she commenced to cry and said to him, "You are not keeping your faith with me and my mother and you promised to take care of me; take me home at once," and that he replied, "Well, all right; you need not worry about anything; we will take you home all right." She testified that they did not have intercourse at this time but he testified that

they did. Their automobile was closely parked with a great number of others, in which were many people. A number of policemen were constantly patrolling the grounds. She made no outcry or any attempt to communicate with the policemen or other people nearby. She testified that they were in the back of the automobile about fifteen minutes, and Kestian testified that they were there for nearly an hour. Following this, Kestian left her in the automobile and returned to the dance hall for her coat. He remained there for some considerable time, dancing with others. About midnight he returned with Conrad and the three drove away together. As they started she said, "You were going to take me home before," and Kestian replied, "Don't worry; we will take you home." Conrad was driving and Kestian was in the back seat with the girl. She noticed that they were driving away from the lights, and said, "Are you taking me home? Is this the right way?" Kestian answered, "Sure." She then said, "You are taking me in the country; you are not taking me home." He replied, "I thought you liked the country; you came from the country." He then tore off her bloomers and tried to have intercourse. She resisted, and he said, "What in the hell are you fighting for?" He continued the attempt but was unsuccessful. He then told Conrad to stop the car. Conrad came into the back seat and attempted to assault her. An automobile passed. Conrad said, "Did they stop?" and Kestian said, "No." She screamed and said, "I'm a good girl; leave me alone." Conrad then struck and strangled her. When she had no more resistance he consummated the assault. Kestian returned and started to strangle her. She resisted and he had intercourse with her. They stopped the car. Conrad again came back and fought with her, saying, "I'll kill you; we have a revolver there; we will shoot you." She testified that they were then going to throw her out and crack her skull. Conrad then said, "You still have fight in you," whereupon he consummated his second as-

sault. Kestian then returned and had intercourse with her again, after which he said to Conrad, "Let us drive her home." They reached her home about 2:00 in the morning. On the way home Kestian asked her to go out with him on the Thursday night following, and she told him that she would go, because, as she testified, she was afraid they would not take her home if she did not so promise. She further testified that upon reaching her home they said to her, "You got off easy; the other girls got worse treatment than you did." Before retiring she said good night to her mother but nothing about having been assaulted. The next morning she left home as usual, making no mention of what occurred the night before. She reported sick at her place of employment. Later in the forenoon she consulted a physician, who advised that she tell her mother. She did so that afternoon. Immediately following this she and her mother went to the police station, where they made the complaint which resulted in the arrest and indictment of the plaintiffs in error in this case. The physician testified that his examination of the girl disclosed bruises on her neck and shoulders and evidences of a recently ruptured hymen. Kestian was twenty-one and Conrad was twenty-two years of age. Both testified at the trial. They admitted all of the acts of intercourse testified to by her but said they were had with her consent. This was virtually their only defense. They made no direct denial of any of the conversations above related. Two policemen testified they both admitted at the time of their arrest that the girl had been choked and beaten by them. This was all of the evidence, except the testimony of certain witnesses as to the good character of the plaintiffs in error.

It is first contended that the evidence is insufficient to establish the averment that the crime was committed in Cook county. It shows that the dance hall is located two blocks west of the village of Willow Springs. One of the plaintiffs in error testified that on leaving the dance hall

they drove northeast on Archer avenue towards Chicago and at the time of the assaults they were in the village of Argo. The testimony of the complaining witness is to the same effect. She also said that the assaults were committed in Cook county. There is no proof to the contrary. The court will take judicial notice that the villages of Argo and Willow Springs are situated in Cook county. The proof of venue was sufficient. *People* v. *Golub,* 333 Ill. 554, and cases there cited.

The next contention is that counsel for the plaintiffs in error was unduly restricted in his *voir dire* examination of certain jurors. Counsel had a right to advise the jurors generally concerning the law of the case and to conduct a reasonable examination of them on that subject. (*People* v. *Redola,* 300 Ill. 392; *Lavin* v. *People,* 69 id. 303.) While the examination was in progress the court interrupted counsel and read to the entire jury a general instruction as to the law in criminal cases. It is not contended that the instruction is erroneous, but it is said that by this procedure counsel was hindered and embarrassed in his examination of the jurors individually. The record does not so indicate. It shows that counsel was permitted to fully interrogate the jurors separately after the instruction had been given and that he adopted the instruction as the basis for his further interrogatories. In view of this state of the record the contention is without merit.

It is next contended that the court should have allowed the motion to strike the following statement made by the plaintiffs in error: "You got off easy; the other girls got worse treatment than you did," as not a part of the *res gestæ* and prejudicial. The statement was a part of the general conversation. It was admissible both as a part of the *res gestæ* and also as an incriminating admission indicating that force had been used and an effort to prevent disclosure of the crime. *People* v. *Duncan,* 261 Ill. 339; *People* v. *Kircher,* 309 id. 500.

During the cross-examination of the complaining witness she was asked whether she made any complaint to anyone at the time of the assaults. This was objected to, and the court said, "Sustained, because it makes no difference." The ruling was incorrect and the statement of the court was improper, but we do not think the error is sufficient to justify a reversal, because the evidence sought to be elicited was shown by other testimony of the same witness. *People* v. *Pastel,* 306 Ill. 565; *People* v. *Connors,* 301 id. 249; *People* v. *Willy,* 301 id. 307.

In the course of the cross-examination Conrad testified that Kestian had told him that Kestian had intercourse with the girl before leaving the dance hall, and that he believed what Kestian said. Thereupon counsel for the prosecution asked, "And you expect the judge and jury to believe you now?" This was objected to as prejudicial, but the objection was overruled. It is contended that this was error. The insinuation was improper. In view of the conclusive evidence of guilt the misconduct of counsel does not require a reversal. *People* v. *Durkin,* 330 Ill. 394; *People* v. *Hunter,* 329 id. 186; *People* v. *Cardinelli,* 297 id. 116.

Plaintiffs in error further complain concerning certain remarks made in argument to the jury by counsel for the prosecution. The only remarks complained of to which objections were made are as follows: "I never had a case more worthy of conviction than this one is. He [opposing counsel] says he would not be able to stand up before you if he was not convinced of the innocence of his clients. Men, I could not stand before you if I was not convinced of the guilt of those defendants, and I will ask you to find them guilty. * * * If you cannot from the evidence that you have heard in this case convict these two men I will take my books and throw them into the river." Objections to all of these remarks were sustained and the jury were instructed to disregard them. It is quite clear that the greater portion of these remarks was in answer to like im-

proper statements made by opposing counsel. While this is no justification it at least affords an occasion for these remarks. (*People* v. *Fricker,* 320 Ill. 495; *People* v. *Young,* 316 id. 508.) The remaining portion of them was improper, but the transgression of the rule for legitimate argument was trivial and not such as to warrant a reversal. *People* v. *Durkin, supra; People* v. *Hunter, supra; People* v. *Cardinelli, supra.*

It is finally urged that the court erred in giving and in refusing instructions. The given instruction complained of advised the jury that they were "the sole judges of the credibility of the witnesses," and that among other things they might take into consideration "any circumstances that tend to shed light upon" such credibility. An instruction very much like this one was criticised in *People* v. *Thompson,* 274 Ill. 214, and *People* v. *Krauser,* 315 id. 485, on the ground that it permitted the jury "to determine the credibility of witnesses * * * without any reference to the evidence in the case." In the former case it was held not to be ground for reversal, because there was no showing "that there were any circumstances which were or could have been considered by the jury outside of those shown by the testimony." That is also true in this case. Some of the refused instructions which it is claimed should have been given were proper but their substance appears in a number of given instructions, several of which were offered on behalf of the plaintiffs in error. For that reason the instructions were properly refused. *People* v. *Foster,* 288 Ill. 371; *People* v. *Grosenheider,* 266 id. 324; *People* v. *Jacobs,* 243 id. 580.

In view of the conclusive character of the evidence the errors complained of are not sufficient to justify a reversal.

The judgment of the criminal court of Cook county is affirmed as to both of the plaintiffs in error.

*Judgment affirmed.*