THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellees, *v.* RODNEY CRUISE *et al.*, Defendants-Appellants.

(No. 69-119;

Fifth District—January 26, 1971.

Martin W. Imber, of St. Louis, for appellants.

Robert H. Rice, State's Attorney, of Belleville, for the People.

Mr. JUSTICE HUNT delivered the opinion of the court:

This is an appeal from a judgment of conviction based on a jury verdict of guilty on a charge of forcible rape and the imposition of a sentence of 8 to 20 years in the Illinois State Penitentiary. The issues on appeal are whether or not the evidence showed beyond a reasonable doubt that force was used and certain points of evidence. No appeal is taken from the sentence.

The complaining witness, Sandra Crockett, age 15, resided in St. Clair County, Illinois. On August 18, 1968, during the summer recess of high school classes, she was attending a pre-college program, Upbound, offered by Southern Illinois University in East St. Louis. About 3:00 o'clock in the afternoon she walked a block from her home to the bus line to take a city bus to the campus. While awaiting the bus, a car load of five young men pulled up and stopped. She was casually acquainted with one of the occupants, defendant Edward Hill. They offered to take her to the campus. She entered the car driven by one Bynum, not a defendant here, and occupied by the three defendants and Charles White.

The car started towards the campus and was then blocked by a freight train. After a few minutes the driver turned down a side street and drove into the Sunset Garden Cemetery. No other cars or pedestrians were present or nearby.

The testimony is conflicting as to what happened next. It was testified that Bynum asked the other four men to get out. He then told Sandra what he had in mind. She testified she got out of the car and ran towards the entrance gate; that Bynum yelled, "stop her!" and the three defendants grabbed her and put her back inside the car. They all then stood around the car within easy earshot. Bynum told her to go along easy with it; he said, "just because I was a nice looking girl he hated to mess my face up." Defendant Hill climbed in the car and said, "Bynum would leave me out here in the cemetery for dead, because he didn't care what happened to me, and that I might as well do what he wanted to, peaceful." Bynum told her he would tear her clothes off and she took

them off, all except her bra. She apparently resisted Bynum and he grabbed her arms and shoulders so severely she was sore for a week or more. He told her she was a woman and to stop trying to be a baby. She was in tears and trembling or shaking with fright.

The other defendants stood near the car and leisurely drank wine out of bottles they had purchased earlier in the afternoon. When Bynum had finished with Sandra, he called the defendant Cruise to take his turn. Cruise was followed by defendant Carter and Hill. Charles White sat under a tree nearby, drinking wine, and neither participated in the transactions nor attempted to protect Sandra. The total elapsed time was about two hours.

Defendants took the stand in their own behalf. Each admitted having intercourse with Sandra in the car, but denied it was without her consent. Each testified she did not resist, strike or scratch, and none used physical force. Each denied she attempted to escape and was forceably returned. They estimated the total time at about thirty minutes.

All are in accord that when Hill was finished, Sandra put on her clothes and that she was crying. Bynum drove to a gas station, and a retail store where they talked a few minutes with a mutual friend. White testified they teased him because he had not taken part and he left the car. The other defendants offered to take Sandra on to the school but she asked to be dropped at the home of a friend nearby, a Mrs. Hopkins.

Sandra was crying as she left the car. She entered the home of Mrs. Hopkins, who called Sandra's mother, who came and got her. She did not describe the events of the afternoon to anyone until her mother came. She ran out to the car, sobbing, leaned on her mother and said she had been raped. On inquiry she indicated with her hand that five were in the car and four had assaulted her. Her mother noticed her face was swollen and puffed from crying, her clothing was rumpled and soiled, and her arms were bruised and extremely sore and tender. She was taken to a doctor for examination and treatment. She later found she was pregnant from the incident, and had an abortion. She was still under a doctor's care at the time of the trial. No doctors testified. Sandra testified she had never had intercourse before.

The jury apparently believed Sandra's story and found there was sufficient evidence of force and threat of force to constitute rape. A minor, 15 years of age and without previous experience, is not expected to be wise in the ways of men, nor to react in the manner of older women. Having attempted to flee and having been dragged back; having been threatened with disfigurement and possible death by five men who were drinking; having been forced to undress and to submit with force applied to her arms and shoulders; having been relieved of her clothing so she

could not, run, and shaking and crying with fear and fright, she submitted to repeated acts of intercourse by four men. Resistance by this child would have been not only futile but dangerous, as she had been warned. To imply consent because she did not beat at or scratch her assailants would be unwarranted. The age of the complaining witness, the callous conduct of the defendants and their positive identification and admissions distinguish the case at bar from *People v. Defrates*, 33 Ill.2d 190, 210 N.E.2d 467, and others relied upon by defendants.

As was said in *People v. Smith*, 32 Ill.2d 88, 92, 203 N.E.2d 879,

"The defendant earnestly contends that this evidence was insufficient to show that the admitted act of intercourse was accomplished by force and against the will of the complaining witness. There is no definite standard fixing the amount of force required and each case must be considered on its own facts. It is the general rule that if the female has the use of her faculties and physical powers the evidence must show such resistance as will demonstrate that the act was against her will. However, resistance is not necessary under circumstances where resistance would be futile and would endanger the life of the female, nor where she is overcome by superior strength or paralyzed by fear, (PEOPLE vs. FAULIS, 25 Ill.2d 457.)"

See also, *People v. Ardelean*, 368 Ill. 274, 13 N.E.2d 976.

■■ Defendants raise certain evidentiary problems. One of the defendants, Aramy Carter, approached Karen Avis Waters, Sandra's sister, about three weeks before the trial. He said, "I am sorry about what happened." Mrs. Waters was permitted to testify about this conversation and that it referred to the rape of her sister. The other defendants claim this was an implicating admission by the one defendant outside the presence and without the consent of the other two. We cannot agree. Carter spoke only for himself and in no way implicated anyone else. No motion was made or instruction offered to restrict this testimony. Having regard to the participation of the defendants in the trial, the error, if any, was harmless.

Objection was also made to the testimony of Sandra's mother, Iola Crockett, that Sandra had become pregnant and seven or eight weeks after the assault, had undergone an abortion. This testimony was elicited by defense counsel on cross examination and came in response to the question: "Has your daughter had any children?" The answer was responsive to the question. Having admitted the intercourse throughout the trial, defendants are in no position to claim prejudice.

Defendants also claim that Sandra must have consented to the assaults because she didn't jump and run at the first stop of the car at a service station, or later at a store, and did not scream out upon being dropped

off at the Hopkins's residence, but waited about fifteen minutes until her mother came to complain of the rape. Again, a minor, age fifteen, inexperienced in such matters, frightened, under shock from a nightmare assault by four strange men, in broad daylight, in the presence of each other, for a period of up to two hours, can hardly be expected to do other than to escape without further bodily harm and then disclose her problems only to her mother. Such affairs are hardly matters to be spread among friends, neighbors, and other children. The child exercised proper restraint for one of her age, which should not be construed as evidence of guilt for previous voluntary acts of immorality.

■■ Finally, defendants charge that Sandra's statement to her mother was not properly part of the *res gestae* and was adduced by questions. It was the first opportunity Sandra had to disclose her problems to anyone she could trust. The fact her mother asked the sobbing child, "How many touched you?" and she raised four fingers, does not violate the rule of *res gestae*, nor constitute harmful prejudice to defendants, who all freely admitted having intercourse with her.

The judgment of the circuit court of St. Clair County is affirmed in all respects.

Judgment affirmed.

MORAN, P. J., and EBERSPACHER, J., concur.