THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MARTIN TREJO *et al.,* Defendants-Appellants.

Second District (1st Division)    Nos. 75-29, 75-192 cons.

Opinion filed July 20, 1976.

---

Frank Wesolowski, Jr., Public Defender, of Wheaton, and Joseph Lascaro, of Wood Dale (Robert H. Heise, Assistant Public Defender, of counsel), for appellants.

John J. Bowman, State's Attorney, of Wheaton (Phyllis J. Perko and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

The four defendants herein, Martin Trejo, Dana Rainwater, Lawrence Tully and Enrique Flores, were found guilty by a jury of the offense of rape and were sentenced, respectively, to 4-5, 4-6, 4-8 and 4-6 years' imprisonment. They assert on appeal: (1) that they were not proven guilty beyond a reasonable doubt; (2) that the State failed to prove that the offenses occurred in Du Page County and the instructions given assumed that venue had been proven: (3) that the trial court erred in allowing the State to elicit testimony from the prosecutrix about alleged prior criminal conduct of the defendant Tully; and (4) that the trial court erred in not conducting a hearing on the question of whether the jury was contaminated by improper conduct of the bailiff.

The prosecutrix testified that on September 24, 1973, she was a high school student and accepted a date with the defendant Trejo. Trejo arrived at her home with the defendant Flores, whom she barely knew and did not expect. The three parked in the driveway of the home of one Marcello Vega for about one hour and then went to an establishment where the defendant Flores purchased some beer. The three then went to the home of the defendant Tully in Wood Dale where they parked in the driveway and drank beer. Another car arrived and two individuals exited the vehicle and went towards the house. The prosecutrix had exited the

car she had arrived in and went behind the building. When she returned, the four defendants were in Trejo's car. The prosecutrix noticed that another car was parked behind the Trejo car, thereby blocking its exit. She entered the Trejo car and then told Trejo "a lot" of times that she wanted to leave. Then, someone suggested that the five individuals enter the car parked behind the Trejo car because the Trejo car lacked a window on the driver's side and it was raining. This was done. The defendant Tully started "talking dirty" to the prosecutrix, saying that he wanted her to have sex with the defendant Trejo. She continued to ask Trejo to take her home but he refused. The defendant Tully then passed a bottle of liquor around. The prosecutrix told Trejo that she didn't want any and he said that she should pretend to drink. She held the bottle to her lips but did not drink. She then exited the car and went into the Trejo car along with Trejo. She repeated her request to Trejo to take her home and started crying. He again refused, saying that he couldn't take her home and that if he had a choice between doing what they wanted him to do, he would rather follow their directions because he didn't want to be in trouble with the others.

The prosecutrix then testified, over objection, that earlier that evening, before the defendants Tully and Rainwater arrived, Trejo had told her that the defendant Tully "was mean, that he had been in prison * * * and that he had weapons in his house." She testified that she was told that Tully had been in prison for murder. The trial judge then instructed the jury to receive this testimony not for the truth of the matters asserted therein but only for the fact, if so found by the jury, that Trejo had told this to the prosecutrix.

Following denial of defense motions for mistrial, the prosecutrix then testified that Trejo left the car and then Tully entered. A struggle ensued in the back seat, the prosecutrix's arms were pinned above her head and someone put his hands through the car window and pulled off her pants. She kept on kicking Tully and pushing him back. She tried to scream but "it wouldn't come out." Tully then had sexual intercourse with her and the prosecutrix fainted. The next thing she remembered was that Tully was not in the car and Rainwater was. She tried to push him back and again tried to scream but could not. The defendant Rainwater then had sexual intercourse with her and she again fainted. The prosecutrix then testified to forcible sexual intercourse by the defendants Flores and Trejo.

The prosecutrix next testified that the next thing she recalled was that she was in a moving car which was also occupied by Trejo and Flores. She put her pants back on and Trejo tried to take them off and put his hands down her pants. At this point, she opened the car door and jumped out of the moving vehicle.

The prosecutrix's mother testified that when she first saw her daughter

at the police station, she was crying and yelling and told her that she had been raped. Officer Bender, a policeman with the City of Wood Dale, testified that he arrived at a home in response to a radio report that there was a girl there requesting the police. When the officer arrived, the prosecutrix told him that she had jumped from a speeding car and had been raped. Another police officer also testified that when he arrived in a separate police car, he observed that the prosecutrix appeared to be upset, was sobbing and her clothes were wet and muddy. She told him that she had been raped. The doctor who examined the prosecutrix in the emergency room at Alexian Brothers Hospital in Elk Grove Village testified that the prosecutrix told him that she had been raped.

The defendants Rainwater, Trejo and Flores testified that all four of the defendants had sexual intercourse with the prosecutrix, but that she offered no resistance and consented to the acts. The defendant Tully did not testify.

Defendants first contend that they were not proven guilty beyond a reasonable doubt. In making this contention, defendants argue that "the record is replete with contradictions, falsities and irrational explanations" as to what occurred at the time and place in question. They argue that there was no evidence that any force had been used on the prosecutrix to remain at the scene and point to her testimony that she entered and remained in the Trejo vehicle after demanding that Trejo take her home. They assert that the absence of any tears in the prosecutrix's clothes serves to weaken or destroy her testimony that someone forcibly removed her pants from outside the car. They further point out that the prosecutrix did not scream, even though Tully's house was nearby and a 24-hour restaurant was located across the street.

Defendants also point out that at trial, the prosecutrix admitted that she had not told the truth to Officer Bender and a police matron who was with him at the time when she answered a certain question about the alleged rape. Officer Bender had asked her "did Larry [Tully] enter you sexually?" The prosecutrix responded, "I don't know. I kept blacking out and it did not hurt like my girlfriend said it would the first time, so I don't know."

Defendants further point to the testimony of the examining physician that he found no bleeding, swelling, contusions or abnormalities to the pelvic area of the prosecutrix.

Defendants also argue that the credibility of the prosecutrix was weakened by the fact that she did not sign a complaint against the defendants until 50 days after the incident and this was after Trejo's sister had filed a complaint against her for battery. They also argue that the time frame involved rendered the prosecutrix's testimony unreasonable. According to the defendants, the prosecutrix testified that the first assault

upon her began about midnight and the rapes terminated some 4½ hours later. With regard to this last point, it should be noted that the defendant Trejo testified that the defendants Rainwater and Tully arrived at the Tully residence at about 1 a.m. and that he left the residence with the defendant Flores and the prosecutrix at about 3 a.m.

Defendants assert that the testimony of the prosecutrix was also inconsistent as to why she did not exit the Trejo vehicle prior to, or during the alleged rapes. At trial, the prosecutrix testified that there were bushes against the passenger side of the Trejo car which, she thought, would have prevented her from opening the car door. At the preliminary hearing, however, the prosecutrix allegedly testified, although at trial she did not recall having done so, that the bushes were from 6-9 feet from the car.

■■ The general rules regarding the quantum of proof required to sustain a conviction for rape and the role of a court in reviewing such a conviction are well established in Illinois. These rules were aptly stated in *People v. Collins* (1974), 21 Ill. App. 3d 800, 804-05, 315 N.E.2d 916, 919-20, as follows:

> "Reviewing courts have a special duty to carefully examine the evidence in rape cases. But in doing so the court may not encroach upon the function of the trier of fact to weigh credibility and otherwise assess the evidence presented. That evidence is conflicting will not justify a reversal of a finding of the trier of fact. [Citation.] In order to sustain a conviction of rape, the testimony of the complaining witness must be clear and convincing or substantially corroborated by some other facts, evidence or circumstances. [Citations.] A reviewing court will not disturb a verdict or reverse a judgment of conviction unless the evidence is so palpably contrary to verdict or so unreasonable, improbable or unsatisfactory as to cause a reasonable doubt of guilt of the accused. [Citation.]"

In addition, the Supreme Court has stated the following with regard to the issues of force and resistence required in a prosecution for rape:

> "There is no definite standard fixing the amount of force required and each case must be considered on its own facts. It is the general rule that if the female has the use of her faculties and physical powers the evidence must show such resistance as will demonstrate that the act was against her will. However, resistance is not necessary under circumstances where resistance would be futile and would endanger the life of the female, nor where she is overcome by superior strength or paralyzed by fear. [Citation.]"
> *People v. Smith* (1965), 32 Ill. 2d 88, 92, 203 N.E.2d 879, 881.

■■ We do not find the evidence in this case to be so unreasonable,

improbable or unsatisfactory as to cause a reasonable doubt of the guilt of the defendants herein. In the instant case the testimony of the prosecutrix was sufficiently clear and convincing to alone sustain the conviction. In addition, her testimony was corroborated. The prompt complaint of the prosecutrix to the officers, to the examining physician and to her mother is corroborative of her testimony. (*People v. Reese* (1973), 14 Ill. App. 3d 1049, 303 N.E.2d 814.) The fact that the prosecutrix apparently did not complain of rape at the residence from which the police were called does not weaken her testimony since there is no requirement that a rape victim immediately disclose the rape to strangers. (*People v. Sims* (1972), 5 Ill. App. 3d 727, 283 N.E.2d 906.) Further, in view of these prompt complaints, her failure to file a formal complaint until some 50 days after the rape was but a factor for the jury to consider in weighing the testimony of the prosecutrix. In this regard it is to be noted that the prosecutrix testified that she did not file a complaint earlier because her mother would not let her do so earlier and that she was not aware that a complaint had been or was going to be filed against her for battery until after she signed a complaint for rape.

■■ We further find the prosecutrix's testimony regarding resistance and attempts to scream sufficient under the circumstances to sustain the conclusion of the jury that the acts were committed by force and against her will. (*People v. Sims; People v. Cruise* (1971), 130 Ill. App. 2d 923, 266 N.E.2d 109.) Any further resistance on the part of the prosecutrix to the advances of the four defendants, who had been drinking, could well have been not only futile but dangerous. Also, the testimony of the prosecutrix that she jumped from a moving car to escape is indeed inconsistent with the defense theory of consent. The various other matters raised by the defendants go merely to the weight to be accorded the prosecutrix's testimony or present other matters for consideration by the jury. When all the evidence is considered together, we find there was sufficient evidence to sustain the convictions. *People v. DeFrates* (1965), 33 Ill. 2d 190, 210 N.E.2d 467, cited by the defendants, is wholly distinguishable, unlike the case at bar, in that there several circumstances were found to have negated the State's position that the prosecutrix had been paralyzed by fear.

■■ We next consider defendants' contention that the State failed to prove that the rapes occurred in Du Page County and, further, that the jury instructions were improper in that they assumed that venue had been proven. These contentions are patently without merit. The testimony in the instant case showed that the rapes occurred on Forestview, directly across from the Two Eagles, which was identified as being located in Wood Dale. The officers testified that both the Two Eagles and Forestview are located in Wood Dale. In *People v. Long* (1950), 407 Ill.

210, 95 N.E.2d 461, the Supreme Court held that it could take judicial notice that a city is located in a certain county. Thus, the testimony which placed the rapes in Wood Dale is sufficient to establish venue. In addition to this, however, Officer Thomka testified that everything he testified to occurred within the county of Du Page. It is clear that the State established that the offenses occurred in Du Page County. Defendants' contention with regard to the jury instructions is answered by the case of *People v. Anderson* (1934), 355 Ill. 289, 189 N.E. 338, where it was held that there is no need for the jury to be instructed regarding a finding of venue where that issue is uncontroverted by the evidence. Since there was no evidence in the instant case tending to indicate that the offense occurred anywhere but in Du Page County, the jury instructions were not improper on the ground that they improperly assumed that venue had been proven.

We next consider whether the trial court erred in allowing the prosecutor to elicit testimony from the prosecutrix that the defendant Trejo had told her that the defendant Tully had been in prison for murder. As noted above, the trial judge immediately issued a limiting instruction to the jury with respect to this testimony.

It is true, as defendants contend, that in a criminal case evidence which directly, or by inference, tends to show that the accused has committed another criminal offense is inadmissible where its only value is to create an inference that because an individual has committed other crimes he is more likely to have committed the one for which he is on trial. (*People v. Lehman* (1955), 5 Ill. 2d 337, 125 N.E.2d 506.) As pointed out in *Lehman*, citing 1 Wigmore, Evidence §194 (3d ed. 1940), such evidence is objectionable "not because it has not appreciable probative value, but because it has too much." However, "Evidence of other offenses is admissible if relevant for any purpose other than to show propensity on the part of the defendant to commit the crime." *People v. Cole* (1963), 29 Ill. 2d 501, 503, 194 N.E.2d 269, 271. See also *People v. Dewey* (1969), 42 Ill. 2d 148, 246 N.E.2d 232, and *People v. Allen* (1971), 1 Ill. App. 3d 197, 272 N.E.2d 296.

In *People v. Kestian* (1929), 335 Ill. 596, 167 N.E. 786, the prosecutrix in a trial for rape, testified that after she had been raped the two defendants had told her, "You got off easy; the other girls got worse treatment than you did." The Supreme Court found no error in the admission of this testimony, stating:

> "The statement was a part of the general conversation. It was admissible both as a part of the *res gestae* and also as an incriminating admission indicating that force had been used and an effort to prevent disclosure of the crime. *People v. Duncan*, 261 Ill.

339; *People v. Kircher*, 309 Ill. 500." 335 Ill. 596, 601, 167 N.E. 786, 789.

In *People v. Smith* (1972), 6 Ill. App. 3d 259, 285 N.E.2d 460, a defendant who had been convicted of aggravated battery, attempted rape and armed robbery complained of the following question asked by the prosecutor and answered by the complaining witness:

"Q. Now, did he indicate to you that he had any fear or didn't have any fear of assuming this type of activity?

The Witness: A. Yes, he did. He told me that he had been in prison for five years and he had nothing to lose." (6 Ill. App. 3d 259, 262, 285 N.E.2d 460, 462-63.)

The appellate court held that the evidence was admissible because it was relevant to prove defendant's intent.

In *People v. Allen* (1975), 27 Ill. App. 3d 1054, 327 N.E.2d 387, the defendant had been convicted of rape and other offenses. The complaining witness testified that during the assault the defendant had said, "Be quiet or I will kill you. I have done this before and I will do it again. Be quiet or I'll kill you." (27 Ill. App. 3d 1054, 1057, 327 N.E.2d 387, 391.) The appellate court found no error in the admission of this testimony. The court found the statement not to be hearsay and relevant because it was probative of defendant's activities in committing the offense.

■■ In the instant case, the statement of the defendant Trejo was relevant because it tended to show why the prosecutrix acted the way she did. Specifically, it showed why she feared for her safety and went to explain why she did not resist any further than she did. It was, therefore, relevant to the issues of force and consent. *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, cited by defendants, is inapplicable to the present situation in that it deals with impeachment by prior conviction. Here, Trejo's statement was not admitted for such a purpose but rather, as noted, to show the prosecutrix' fears and motive for not resisting further than she did.

The defendant Flores, who has filed a separate brief in this court, makes the additional contention that the defendant Trejo's statement to the prosecutrix had no probative value as to him and was therefore irrelevant and inadmissible and also highly prejudicial.

In *People v. Hutter* (1975), 29 Ill. App. 3d 92, 329 N.E.2d 873, this court stated that the rules applicable to the admissibility of evidence of other crimes of the defendant are not applicable to the admissibility of evidence of crimes committed by another party. "Rather, the test of admissibility for such evidence is one of relevancy to the issue in the case balanced against the prejudicial effect on the jury." (29 Ill. App. 3d 92,

100, 329 N.E.2d 873, 878-79.) In that case, the defendant fired a shot through a door which injured a police officer who was forcibly executing a search warrant for drugs at the Gutowski residence. At defendant's trial for attempted murder the State produced evidence that certain items of contraband were found in the residence, but no allegation was made that defendant was in possession thereof. Mr. Gutowski, who had held the bedroom door shut against the officers, testified that he had been indicted for such possession. We there held that since this contraband was not alleged to have been possessed by defendant, and since the evidence was relevant to the issue of justification, any prejudicial effect that such evidence may have had was outweighed by its relevancy.

In this case, the testimony of the prosecutrix presently complained of in no way implied that the defendant Flores had committed another offense. In view of the defense of consent interposed by all of the defendants, Trjo's statement to the prosecutrix was relevant to this issue in that it tended to explain, as noted above, why the prosecutrix feared for her safety and did not further resist. While the probative value of such testimony is greatest with respect to the defendant Tully, the testimony also has a tendency to explain the conduct of the prosecutrix throughout the entire criminal episode. We find, therefore, that if the defendant Flores, or for that matter the defendants Trejo and Rainwater, were prejudiced by the admission of such testimony, such prejudice was outweighed by the relevancy of the testimony.

■■ In any event, we find that even if error were committed by the admission of the testimony, it was not reversible error. When all the competent evidence is considered and weighed against all the facts and circumstances of the case, we believe that there was no reasonable probability that the jury would have acquitted the defendant Flores had the evidence complained of been excluded. See *People v. Smith* (1973), 15 Ill. App. 3d 10, 304 N.E.2d 50, and *People v. Tranowski* (1960), 20 Ill. 2d 11, 169 N.E.2d 347; *People v. Allen.*

We turn then to defendants' final contention, that the trial court erred in refusing to order a hearing on the question of jury contamination. In their post-trial motion, defendants asserted that they were denied a fair trial due to jury contamination and by motion requested that the trial court order a hearing to explore the facts alleged in the post-trial motion. In the post-trial motion, defendant stated that at about 6:30 p.m. Deputy Sullivan, who had custody of the jury, informed the defendants' attorneys that he would check with the jurors to determine if they were near a verdict as the dinner hour was approaching. He entered the jury room and returned about one minute later, stating that the jury was near a verdict and had requested that he return in about 30 minutes. Defense counsel then left the courtroom for dinner at 6:30 p.m. Then, certain

spectators and court personnel discussed whether the jurors would be taken out to dinner. One of the court personnel allegedly stated, "He [Deputy Sullivan] knows how to save the State money." At about 6:45 p.m. Deputy Sullivan re-entered the jury room and remained there for about five minutes. At about 7 p.m. he again entered the jury room and remained for about two to three minutes. Before the jury returned to the courtroom Deputy Sullivan called the sheriff's office and stated that "We have four prisoners here." This post-trial motion was supported by two affidavits filed by the defendant Tully's brothers.

At the conclusion of the hearing on this motion, held on December 18, 1975, the trial court denied the defendants' request that a hearing be held, in which the bailiff, matron and jurors would be called as witnesses, to explore the allegations of the motion. The trial judge stated that, while he would not allow any additional time for such a hearing, he would not interfere with any attempts of the defendants to interview the bailiff, matron or jurors. On December 30 the remaining issues raised in defendants' post-trial motion were heard by the trial court and no additional material was presented with respect to the issue of jury contamination.

■■ As a general rule, courts will not receive affidavits or testimony of jurors who rendered a verdict for the purpose of impeaching their verdict. (*People v. Pulaski* (1958), 15 Ill. 2d 291, 155 N.E.2d 29.) However, "the rule does not preclude an inquiry into the effect of prejudical influences upon the deliberations of a jury." *People v. DeBartolo* (1975), 24 Ill. App. 3d 1000, 1007, 322 N.E.2d 251, 257.) As jury's verdict will not be set aside on the basis of improper communications with the jury by the court or by third persons outside the presence of the defendant unless defendant can show injury or prejudice as a result. (*People v. Mills* (1968), 40 Ill. 2d 4, 237 N.E.2d 697.) The cases cited by the defendant are not on point in resolving the issue presented since in each case specific allegations of impropriety were alleged.

When it is alleged that a jury has been improperly influenced by allegedly prejudical materials, such as newspaper reports, the rule has developed that a trial judge has considerable discretion in determining whether such material prejudiced the defendant. (See *e.g., People v. Malmenato* (1958), 14 Ill. 2d 52, 150 N.E.2d 806.) A trial judge has similar discretion to determine whether there were improper influences upon the jury by the bailiff during jury deliberations.

■■ In this case, although better practice would have included an examination of the bailiff by the trial judge in the presence of counsel, we find that the trial judge did not abuse his discretion in refusing to order a hearing on the issue of jury contamination. Clearly, the defendants' post-trial motion and the affidavits in support thereof contain no specific

514

allegations which would warrant an inference that defendants were prejudiced by improper conduct of the bailiff. In the absence of such allegations, we find no error in this regard.

Accordingly, the judgments appealed from are hereby affirmed.

Affirmed.

SEIDENFELD and HALLETT, JJ., concur.