THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAVID E. ISENBERG, Defendant-Appellant.

Fourth District    No. 14677

Opinion filed May 26, 1978.

Phillips, Phebus, Tummelson & Bryan, of Urbana, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Robert C. Perry, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE MILLS delivered the opinion of the court:
Rape and deviate sexual assault.
Jury trial.
Guilty.
Concurrent sentences, 5-8 and 4-6.
We affirm.

The facts are bizarre. At about 4:30 a.m. one morning, the victim was sleeping alone on a mattress on the floor in the bedroom of her apartment in Champaign, Illinois. She awoke and saw a naked man standing at the foot of her bed. Holding something in his right hand, he threatened her not to scream and told her he was going to rape her. She pleaded with him not to do it and told him that she was ill and had been operated on for cancer. Nevertheless, he proceeded to have intercourse with her three different times. And in between the second and third act, there was an act of deviate sexual assault. All of these acts spanned about one hour. The victim finally got away and ran naked and screaming into University Avenue. A neighbor came to her rescue and took her to his apartment where his wife called the police.

Meanwhile, Isenberg got into his automobile and drove a distance of 60 or 70 miles to the home where he had been staying in Saunemin, Illinois, and where he was arrested later the same day. He had left behind in the victim's apartment a pair of shoes, a pair of men's shorts, and a pair of dogtags bearing the name "David Isenberg." Isenberg stipulated with the State that the shoes, underwear and dogtags in the apartment were his. Furthermore, he stipulated that he was the one who performed the acts of intercourse and the act of deviate sexual assault. The defense interposed was insanity.

Now, let us backtrack to the evening prior to the subject acts. Defendant left Saunemin apparently to go to work in Dwight, Illinois, but instead went to a tavern in Pontiac. Isenberg believed he had a few beers at the tavern and purchased a few more upon leaving but claimed he was not intoxicated. He then took a young man from the tavern to his home where the defendant believed he (Isenberg) drank a couple of beers and smoked some marijuana. He got in his car and after stopping in Bloomington, defendant vaguely recalled pulling up in front of the victim's apartment in Champaign. He entered the first floor apartment by the back door and is "almost positive" he just walked in.

The expert testimony was diametrically conflicting. Based on the facts

of the crime and the background of the defendant, Dr. Arthur Traugott was of the opinion that the defendant was suffering from the impact phase of adjustment reaction to adult life. Because of this mental disease, the defendant was unable to conform his conduct on the occasion in question to the requirements of the law, and could have memory lapses as to the events that occurred. On the other hand, Dr. Theodore Kiersch, after examining the defendant, was of the opinion that the defendant was not suffering from any mental disorder or disease and was able to conform his conduct to the requirements of the law. He also stated that a person who has been drinking or consuming marijuana can have a memory loss.

On these trial facts defense counsel on appeal vigorously argues four primary issues:

■■ I. Defendant first alleges that the trial court abused its discretion in denying his motion for a continuance for substitution of counsel. An accused, of course, has a constitutional right to counsel which includes the right to be represented by counsel of one's own choice. (*People v. Green* (1969), 42 Ill. 2d 555, 248 N.E.2d 116.) However, the right to counsel of one's own choosing cannot be used to indefinitely thwart the administration of justice and the granting of a continuance for substitution of counsel is a matter resting within the trial court's discretion. *People v. Solomon* (1962), 24 Ill. 2d 586, 182 N.E.2d 736.

Isenberg was charged on October 14, 1976, and on October 26, 1976, the public defender was appointed to represent him. On January 7, 1977, the public defender withdrew at defendant's request and private counsel entered his appearance. Defendant was tried by jury in April 1977, but, following the verdict, his motion for a new trial was allowed on May 20, 1977. Then on July 18, 1977—the eve of the new trial—defendant made a motion for a continuance based upon the need to contact additional witnesses. That motion was denied. On the day of the trial itself, defendant made a motion for a continuance and substitution of counsel, and during the hearing on the motion defendant stated that there had been a "communication breakdown" between him and his attorney.

■■ These facts indicate that the trial court was justified in denying the motion because defendant's request for substitution of counsel was "not in good faith." Furthermore, before a conviction will be reversed because of a denial of a motion for substitution of counsel, the denial must have embarrassed the accused in preparing his defense and prejudiced his rights. (*People v. Solomon.*) There was no demonstration that defendant's rights were prejudiced by the denial of the continuance in this case.

II. Isenberg next claims the trial court erroneously gave the instruction offered by the State that intoxication is not a defense to rape and deviate sexual assault. It is a legal truism that both the State and the defendant are

entitled to instructions presenting their theories of the case. (*City of Chicago v. Mayer* (1974), 56 Ill. 2d 366, 308 N.E.2d 601.) And only slight evidence relating to a theory will justify an instruction. *People v. Kucala* (1972), 7 Ill. App. 3d 1029, 288 N.E.2d 622.

■■ Here, the expert witness for the defense (Dr. Traugott) testified that a person experiencing the impact stage of adjustment reaction to adult life, such as the defendant, may have memory lapses, while the prosecution's expert (Dr. Kiersch) testified that the defendant's claimed memory losses could have been caused by alcohol or marijuana consumption. Dr. Kiersch also stated that the defendant told him that he was under the influence of alcohol and pot on the night of the offense. According to Dr. Kiersch, Isenberg's behavior indicated he could have been under the influence of alcohol and pot. However, defendant claims section 115—6 of the Code of Criminal Procedure of 1963 rendered the statements made by the defendant to the doctor inadmissible. The section reads in pertinent part:

"Any statements made by defendant to such experts shall not be admissible against the defendant unless he raises the defense of insanity or the defense of drugged condition, in which case they shall be admissible only on the issue of whether he was insane or drugged." (Ill. Rev. Stat. 1975, ch. 38, par. 115—6.)

Defendant here raised the defense of insanity and part of the proof for that defense was Isenberg's memory lapses. The State explained the memory lapses with a statement made to Dr. Kiersch by Isenberg that he was under the influence of alcohol. Clearly, the statement dealt with the insanity issue.

■■ Since there was some evidence that defendant was intoxicated at the time of the sexual attack and the prosecution attempted to explain aspects of defendant's behavior as being the result of intoxication, the State was entitled to an instruction stating that intoxication is not a defense to rape or deviate sexual assault.

III. Isenberg next contends that the trial court erred when it denied his motion to strike the opinion testimony of Dr. Kiersch because it was allegedly based on reports not in evidence. As a general rule, an expert witness must base his opinion on facts in the record and his opinion cannot be based on matters reported to him privately. *People v. Black* (1937), 367 Ill. 209, 10 N.E.2d 801; *Pritchett v. Steinker Trucking Co.* (1969), 108 Ill. App. 2d 371, 247 N.E.2d 923.

■■ Dr. Kiersch testified that before examining the defendant, he read information furnished him by the State's Attorney's office which included police reports and witness statements. He used this information in making his examination and indirectly in arriving at his opinion on Isenberg's competency. Although the materials were used in developing

background information on which he based his opinion, the doctor relied on the material only to the extent they confirmed what Isenberg told him. Dr. Kiersch stated there were no significant differences between what Isenberg said and what was contained in the police reports. The facts that Isenberg related to Dr. Kiersch were presented into evidence through the lengthy hypothetical case posited by the State's Attorney. Since the reports merely confirmed the defendant's statements to Dr. Kiersch which were in evidence, the trial court did not abuse its discretion in denying defendant's motion to strike.

■■■ IV. Lastly, defendant maintains that Dr. Kiersch's testimony that he was appointed by the court to examine Isenberg was highly improper and prejudicial since it gave unfair weight and credence to his testimony. Defendant alleges the following questions by the State were prejudicial:

"Q Did he have problems understanding who you were and why you were there?

A No, I introduced myself with that specific understanding that I was appointed by the court to examine him to make a report to the court.

* * *

Q In particular, directing your attention to this case, I believe you stated that I sent you some police reports along with a letter stating that you had been appointed by Judge Jensen in this matter * * * is that correct?

A That's correct."

By failing to object, we deem the defendant to have waived any error to the Assistant State's Attorney's questions. *Illinois State Trust Co. v. Southern Illinois National Bank* (1975), 29 Ill. App. 3d 1, 329 N.E.2d 805.

Isenberg further claims the following answers by Dr. Kiersch to questions posed by *defense counsel* were prejudicial:

"Q I'm asking, how many of the cases you have testified, were you called to the witness stand by the prosecution?

A In the majority of cases I am called and appointed by the court based upon a request of either the defense attorney or the prosecution. I do not respond to the request from individual attorneys to examine individuals for defensive purposes, if that's the question.

Q That's not my question, Doctor, no matter who makes the application, I'm asking you how many of the cases you've testified in were you called as the People's witness or by the prosecution?

A By the prosecution, I would guess the majority of cases, sixty or seventy.

* * *

Q I believe you testified that Mr. Isenberg knew why you were

there when you went to examine him?

A That is correct.

Q You said this was due to your informing him, what did you tell him?

A I showed him the letter I had from the State's Attorney's office telling me that I had been appointed by Judge Jensen. I told him I was neutral in the case. I didn't represent the prosecution. I didn't represent the defense. I even advised him to ask you to get in touch with me."

Likewise, defense counsel waived any error in the answers given to his own questions by failing to exclude or disclaim the answers. (*People v. Burage* (1961), 23 Ill. 2d 280, 178 N.E.2d 389.) Even if defense counsel had objected, the answers would have been admissible since they were responsive to his own questions. *People v. Cruise* (1971), 130 Ill. App. 2d 923, 266 N.E.2d 109; *People v. Hester* (1964), 49 Ill. App. 2d 308, 200 N.E.2d 3.

For the reasons enumerated, the judgment of the trial court is affirmed.

Affirmed.

CRAVEN and TRAPP, JJ., concur.