THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MOSES FREE, Defendant-Appellant.

Fourth District   No. 4—82—0306

Opinion filed February 8, 1983.

450

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Robert J. Biderman and John M. Wood, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

On April 3, 1982, after a trial by jury in the circuit court of McLean County, the court entered judgment on a verdict finding defendant, Moses Free, guilty of unlawful use of weapons (Ill. Rev. Stat. 1981, ch. 38, par. 24—1(a)(10)). The indictment charged a Class 3 felony, because it was alleged defendant committed the offense within five years of his release from the penitentiary after a conviction for murder. On April 29, 1982, the court sentenced defendant to two years' imprisonment which was to be served concurrently with a sen-

tence defendant was then serving.

On appeal, defendant asserts: (1) his guilt was not proved beyond a reasonable doubt; (2) the trial court abused its discretion by denying him a continuance; (3) his conviction should be reduced to a misdemeanor; (4) the court failed to consider the possibility of placing defendant on probation; and (5) the mittimus should be amended to give him credit for time incarcerated prior to trial.

Section 24—1(a)(10) of the Criminal Code of 1961 states that a person commits the offense of unlawful use of weapons when he knowingly:

> "Carries or possesses on or about his person, upon any public street, alley, or other public lands within the corporate limits of a city, village or incorporated town, except when an invitee thereon or therein, for the purpose of the display of such weapon or the lawful commerce in weapons, or except when on his land or *in his own* abode or *fixed place of business*, any pistol, revolver, stun gun or taser or other firearm." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 38, par. 24—1(a)(10).

The evidence relied upon to support defendant's conviction is undisputed. On November 21, 1981, defendant was employed as a dishwasher at Maxwell's restaurant in Bloomington. While working there that evening, defendant was engaged in an argument with another employee who, in the course of the argument, cut defendant's arm with a knife. Defendant then left the restaurant but later returned and was seen in the back of the kitchen carrying a pistol. Defendant approached the employee who had knifed him, whereupon the latter ran from the kitchen into the front of the restaurant. Defendant followed but returned to the kitchen and then went out the back door into the restaurant parking lot. He entered his car and started to leave, but he was stopped by police before his car left the parking lot.

The issue as to whether the jury could have properly found defendant's guilt to have been proved beyond a reasonable doubt, turns upon the legal question of whether, when defendant carried a pistol in the restaurant of his employment and its adjacent parking lot, he was in his "fixed place of business" within the exception of section 24—1(a)(10) of the Criminal Code of 1961. We conclude that he was not and hold that the proof of his guilt was sufficient.

In *People v. Cosby* (1969), 118 Ill. App. 2d 169, 255 N.E.2d 54, the only reported case interpreting the meaning of the phrase "fixed place of business" in section 24—1(a)(10), the court held that a cabdriver while driving a taxicab was not in his "fixed place of business," noting that the vehicle would move about rather than being fixed to

one place. However, cases from other jurisdictions have held that similar language does not create an exception which would permit the carrying of a dangerous weapon by an employee who is at his place of work but has no proprietary interest in the business.

In *Berkley v. United States* (D.C. App. 1977), 370 A.2d 1331, the defendant was found guilty of violating a weapons statute similar to Illinois' and argued that he was on his place of business. The defendant was a lab technician in the blood unit of a local hospital and was in possession of a hand gun in the hospital when he was arrested. The court of appeals affirmed his conviction stating, "it cannot be assumed that [Congress] intended, in a jurisdiction where there are countless numbers of employees reporting every day to governmental agencies, to write in an exception permitting every employee to carry a loaded pistol while working." (370 A.2d 1331, 1333.) The court stated that the fixed place of business exemption was applicable only to those who have a controlling, proprietary or possessory interest in the business premises in question. Since the defendant had no such interest in the hospital's blood unit the defendant's conviction was affirmed.

In *State v. Valentine* (1973), 124 N.J. Super. 425, 307 A.2d 617, the defendant was convicted of carrying a weapon in a public place without a permit. Defendant was the manager of a bar and had complete control of the business from 6 p.m. to 2 a.m. when the owner was not present. He had a loaded revolver in his pocket when the police searched him while he was working behind the bar. The defendant argued that he was about his place of business and therefore was exempted from the weapons statute. The appellate court noted that the defendant had no proprietary interest in the bar and there was no evidence that the revolver had been acquired by the owner of the bar and in the possession of the defendant in connection with the operation of the business. The defendant's conviction was affirmed.

In *People v. Francis* (1974), 45 App. Div. 2d 431, 358 N.Y.S.2d 148, the defendant pleaded guilty to attempted possession of a weapon. Defendant was arrested while on his job in the United States Post Office attached to John F. Kennedy Airport. The court stated that defendant had no authority or delegation to carry the revolver and the possession of the gun was not in any way in furtherance of any function or duty being performed by him for the postal service. His conviction was affirmed.

■ Unless the employee carrying the weapon needs to use the weapon in his employment, such as is the case with a guard or night-watchman, little authority supports the view that the employee

comes within statutory exemptions similar to that in section 24—1(a)(10) (Annot., 57 A.L.R.3d 938, 942, 960 (1974)). The logic for this is much as stated in *Berkley*, that legislative bodies cannot be assumed to have intended to permit all employees to carry weapons while at work. The drafting committee for the Criminal Code of 1961 stated, in reference to the rationale for article XXIV of the Code, that:

> "The possession and use of weapons inherently dangerous to human life constitutes a sufficient hazard to society to call for prohibition unless there appears appropriate justification created by special circumstances." (Ill. Ann. Stat., ch. 38, par. 24—1, Committee Comments, at 83 (Smith-Hurd 1977).)

We conclude that neither the drafting committee nor the legislature intended that each employee, while at his place of work, should be entitled to possess a weapon. No "special circumstances" would have required that. Rather, we deem the committee and the legislature to have intended that a proprietor have this right in the proprietor's "fixed place of business."

On December 3, 1981, prior to indictment, the public defender of McLean County was appointed to represent defendant. On March 2, 1982, the date the case was set for trial, defendant requested he be granted a continuance to obtain a lawyer of his own choosing. Defendant vociferously protested against the counsel appointed for him, complaining that counsel advised him as to the manner in which the case should be presented with particular reference to (1) whether the defendant should testify, (2) what testimony of the defendant might be admissible, and (3) what the defendant should state to the court. Defendant stated that he had gotten his "income tax papers back," perhaps indicating that he had some tax refund. He also mentioned that his financial situation had changed and that if he had more time, he "might" be able to hire counsel. Some of the comments of defendant, who was black, indicated he thought his white assistant public defender was racist.

In claiming his right to counsel was violated, defendant relies upon *People v. Green* (1969), 42 Ill. 2d 555, 248 N.E.2d 116, where a conviction was set aside because the defendant was forced to trial with a counsel appointed by the court on the day of trial. A church group had apparently obtained counsel for that defendant, but the lawyer did not appear for trial. The court stated that a defendant "cannot be permitted to bring about an 'indefinite thwarting of the administration of justice.'" (42 Ill. 2d 555, 557, 248 N.E.2d 116, 117.) Defendant also relies on *People v. Friedman* (1980), 79 Ill. 2d 341,

403 N.E.2d 229, *People v. Isenberg* (1978), 60 Ill. App. 3d 325, 376 N.E.2d 778, and *People v. Wallace* (1976), 44 Ill. App. 3d 89, 357 N.E.2d 858, where, in holding that denial of a continuance did not deprive the defendant of his right to counsel, the courts repeated the language of *Green* concerning the indefinite thwarting of justice.

■ We do not understand the language of the above cases to permit a defendant, as a matter of right, to even temporarily thwart the administration of justice. The trial judge is placed in a very difficult position when a defendant in a criminal case moves, within a few days of trial, for a continuance to obtain new counsel. We have struggled with the question for a long time. However, where, as here, there was no counsel identified as being ready, willing and able to take over, we held in *People v. Koss* (1977), 52 Ill. App. 3d 605, 367 N.E.2d 1040, that denial of a continuance to obtain new counsel was not a breach of discretion. This case differs from *Green* in that there the defendant had an attorney who had failed to appear. It also differs from *Green* in that the court appointed attorney who represented the defendant here was prepared. Although defendant was incarcerated prior to trial, he had ample time to attempt to obtain counsel of his own choosing if he so wished and was able to do so. There was no indication that defendant's ability to obtain private counsel would have improved substantially if he had obtained a continuance. The circumstances imply that defendant's request was for the purposes of delay. The denial of his request was not a breach of discretion by the trial court and did not deprive defendant of his right to counsel.

Section 24—1(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 24—1(b)) provides that a person commits a Class 3 felony when that person was previously convicted of a felony and, within five years of release from prison where he was serving sentence for that felony, that person violates any subsection of section 24—1. Defendant was sentenced here upon a basis that he came within the above provision and, thus, committed a Class 3 felony. He contends the evidence was insufficient to prove this.

■ Evidence was presented at trial that (1) a "Moses Free" had been incarcerated at the Pontiac State Prison and was released in January 1980, and (2) a parole officer of the State testified he had been assigned to defendant, and that defendant came under his supervision in September 1980. The foregoing was probably insufficient proof that defendant was the "Moses Free" who had been released in January 1980. (*People v. Stewart* (1961), 23 Ill. 2d 161, 177 N.E.2d 237.) However, the supreme court has held that a determination to enhance a sentence because of a prior conviction may be made at sen-

tencing where, a defendant has notice that a prior conviction is being relied upon and the conviction is proved beyond a reasonable doubt. (*People v. Hayes* (1981), 87 Ill. 2d 95, 429 N.E.2d 490.) Here, the charge informed defendant that his prior conviction for murder and his discharge from the penitentiary within five years would be relied upon to enhance his punishment. A presentence report, available to defendant, was furnished at sentencing. The reported showed defendant was convicted of murder in 1971 and released on parole in 1980. The evidence presented at trial was properly before the court at sentencing (Ill. Rev. Stat. 1981, ch. 38, par. 1005—4—1(a)(1)). This, together with the presentence report, was sufficient to prove defendant's prior conviction and release within five years of the commission of the present offense beyond a reasonable doubt.

Furthermore, the record of the proceedings of defendant's arraignment before a different judge than the sentencing judge shows defendant admitted he had previously been convicted of murder in this State and discharged from the penitentiary in January 1980. Defendant made the admission while testifying in support of his request to be admitted to bail.

■ In *People v. Green* (1959), 17 Ill. 2d 35, 160 N.E.2d 814, the defendant was convicted of armed robbery. After the trial court announced the sentence, the defendant asked that he be allowed to address the court and was granted permission to do so. The defendant then acknowledged his guilt. On appeal, the defendant assigned various errors relating to the sufficiency of the evidence against him. The supreme court stated that the defendant could not question the sufficiency of the evidence against him because he was bound by his confession. The court indicated that the defendant's confession waived any error concerning the evidence of his guilt. An analogous waiver arising from defendant's admission of the enhancing factors operates here to prevent defendant from questioning the sufficiency of the proof of those factors.

Defendant's final contention concerns claims that the trial court failed to consider the possibility of placing defendant on probation and failed to give him credit for time spent in jail pending trial.

Section 5—6—1(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, par. 1005—6—1(a)) states:

> "Except where specifically prohibited by other provisions of this Code, the court shall impose a sentence of probation or conditional discharge upon an offender unless, having regard to the nature and circumstances of the offense, and to the history, character and condition of the offender, the court is of the opin-

ion that:

(1) his imprisonment or periodic imprisonment is necessary for the protection of the public; or

(2) probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice."

Upon the Unified Code of Corrections (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 1001—1—1 *et seq.*) becoming effective January 1, 1973, section 5—1—18 of the Code (Ill. Rev. Stat., 1972 Supp., ch. 38, par. 5—1—18) defined probation as a sentence. The Code made no provision that application by a defendant for a type of sentence was a prerequisite for receiving that sentence. Where, as here, a defendant was eligible for probation, section 5—6—1(a) made consideration of probation by the court mandatory. Thus, the former rule that a defendant need not be considered for probation absent application (*People v. Ward* (1971), 1 Ill. App. 3d 888, 275 N.E.2d 256) was no longer in force. Any indication to the contrary in *People v. Johnson* (1975), 33 Ill. App. 3d 957, 338 N.E.2d 895, is incorrect. The State's claim that this defendant waived any right to probation by failing to request it is also incorrect. However, the sentencing court need make only substantial compliance with section 5—6—1(a). If the court recites that reasons showing why a sentence of imprisonment is necessary, substantial compliance is shown. (*People v. Kuesis* (1980), 83 Ill. 2d 402, 415 N.E.2d 323.) On the other hand, if no explanation for imposing imprisonment is given, no substantial compliance is shown, and the defendant is entitled to resentencing. *People v. Cox* (1980), 82 Ill.2 d 268, 412 N.E.2d 541.

■ In this case the trial court made no findings, and its only remarks were directed to negating the request by the State that a term of five years' imprisonment be imposed. The trial court noted the strong provocation for the defendant to commit the offense and stated that, accordingly, the court would impose the minimum sentence of imprisonment. Although the trial court was obviously trying to be very fair to the defendant, it did not give any explanation as to why imprisonment rather than probation or an even lesser sentence than probation should not be imposed. This was not substantial compliance with section 5—6—1(a) and requires remand for resentencing.

■ At resentencing, the court should make a determination as to the sentence credit to which he is entitled for the time he was incarcerated for the offense prior to sentencing. Section 5—8—7(b) of the Unified Code of Corrections states:

"The offender shall be given credit on the determinate sen-

tence or maximum term and the minimum period of imprisonment for time spent in custody as a result of the offense for which the sentence was imposed ***." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—7(b).)

The State maintains that the credit should only be that time from defendant's arrest until a hold order was issued by the Department of Corrections pursuant to proceedings to revoke defendant's parole. The State relies upon *People v. Vahle* (1978), 60 Ill. App. 3d 391, 376 N.E.2d 766. There, unlike here, the defendant had been released on bail prior to being taken into custody for an alleged probation violation. Here, defendant was in custody when the order was issued. We know of no authority for a theory that defendant's sentence credit for an offense for which he is in custody should terminate upon the issuance of a hold order by the Department of Corrections.

We cannot determine the credit to which defendant is entitled, because we do not know the date he was brought into custody.

Defendant's conviction is affirmed. The sentence is reversed. The case is remanded to the circuit court of McLean County for resentencing.

Affirmed in part, reversed in part, remanded.

TRAPP and MILLER, JJ., concur.